opinion of the court
Maurice Harbater, J.
ISSUE
May the rent reserved in an unexpired rent-stabilized lease be increased triple the amount during its term pursuant to section 608 of the Private Housing Finance Law? Section 608 of the Private Housing Finance Law is a new statute and the court can find no reported case on this issue.
FACTS
Petitioner is the owner of multiple dwelling premises at 21-09 19th Street. The respondent, a rent-stabilized tenant, executed a renewal lease for a term of three years commencing October 1, 1979 and expiring September 30, 1982.
The lease’s main rider and extension agreement provided that the tenant agreed to pay an increase in rent if the Conciliation and Appeals Board (C.A.B.) granted same. In the event the guidelines established and adopted by the Rent Guidelines Board for levels of rent were increased, the tenant agreed to be bound.
In the summer of 1981, the petitioner entered into a contract with the Department of Housing Preservation and *582 Development (D.H.P.D.) for the subject premises. D.H.P.D. would loan the petitioner moneys at a low interest rate in exchange for the petitioner’s investment in the subject premises for the purpose of rehabilitating the premises.
This “moderate rehabilitation” is different from others in that the existing tenant remains in the apartment and is not relocated or dislocated while the rehab is going on.
The rehabilitation of the premises was certified on April 7, 1982 as being completed. On said date, the Department of Housing Preservation and Development, pursuant to section 608 of the Private Housing Finance Law, issued an order “that effective May 1, 1982 the new initial rent for the apartment will be $586. per month”.
In May, the respondent paid the landlord his customary rent of $198.69. On May 20,1982, the petitioner instituted summary proceedings against the respondent for nonpayment for the difference in May’s rent in the sum of $387.31 ($586 less $198.69).
petitioner’s arguments
Petitioner contends that section 608 of the Private Housing Finance Law defines the rights of the parties herein. That it confers jurisdiction of rentals — the authority to increase rents — in rehabilitated multiple dwellings upon the Department of Housing Preservation and Development and that the C.A.B. “defers to the D.H.P.D.” until the initial rent for the apartment unit is established. Therefore, pursuant to the statute and the lease, D.H.P.D. was authorized to increase the rent from $198.69 to $586 at the time completion of the rehab was certified.
respondent’s arguments
Respondent contends that the raising of respondent’s rent by order of D.H.P.D. unconstitutionally impaired the existing lease between petitioner and respondent. That by D.H.P.D. raising the respondent’s rent, it deprives the tenant of property without due process of law. That D.H.P.D.’s order denies respondent equal protection of the law and that the rent guidelines rider to the lease does not sanction an increase in rental pursuant to an order of D.H.P.D.
*583 THE LAW
Section 608 of the Private Housing Finance Law became effective on March 17, 1981. The statute provides limited authority to the New York City Department of Housing Preservation and Development to establish an “initial rent” upon completion of rehabilitation of housing units in multiple dwellings conventionally financed and aided by HUD’s new section 8 moderate rehabilitation program.
After D.H.P.D. “has set the initial rents, all rental dwelling units within such rehabilitated or converted multiple dwellings shall become subject to the rent stabilization law” (Private Housing Finance Law, § 608, subd 1).
D.H.P.D. has been given the authority to set “initial rent” “notwithstanding the provisions of, or any regulation promulgated pursuant to, the emergency housing rent control law, the local emergency housing rent control act, the emergency tenant protection act of nineteen seventy-four, the local rent stabilization law or any local law enacted pursuant thereto.” (Private Housing Finance Law, § 608, subd 1.)
The need for D.H.P.D. to have such power becomes apparent when reviewing the history and the Legislature’s intent prior to the passage of section 608.
Prior to the enactment of section 608, in New York City the existing rent stabilization and rent control laws did not permit such restructuring of rents.
Pursuant to a nation-wide competition for funds, HUD awarded 4,084 units of section 8 moderate rehabilitation funds in May of 1980 to D.H.P.D. However, D.H.P.D. had the authority to only establish an initial postrehabilitation rent for projects publicly insured or financed using Federal dollars.
The passage of this statute gave D.H.P.D. the same authority for rehabilitating privately financed housing and secured approximately $11,000,000 of conventional financing for the moderate rehabilitation program. A key element to the success of this program is the conventional financing component.
Prior to section 608, $11,000,000 of private financing was placed in jeopardy because D.H.P.D. had not been able *584 to evidence the authority to set a timely initial rent for privately financed rehabilitation units.
The private lending institutions had insisted that D.H.P.D. have this authority before they would commit their financing. Passage of section 608 of the Private Housing Finance Law ultimately provided D.H.P.D. with this limited authority to set the initial rent for housing rehabilitation projects conventionally financed and aided by the Federal moderate rehabilitation program. (See, also, letter of Mayor Edward I. Koch dated March 10,1981 to Governor Hugh L. Carey urging approval of bill S1715 by Senator Mega.)
Getting back to the issue of whether the landlord would be entitled to a tripling of the rents during the term of the lease, the tenant cites section 10 of article I of the Constitution of the United States of America that “[n]o State shall * * * pass any * * * Law impairing the Obligation of Contracts”. In addition, respondent cites many other sections of the Constitution.
This court sees no merit to these constitutional arguments.
A careful reading of section 608 of the Private Housing Finance Law leaves no doubt that the Department of Housing Preservation and Development is authorized to “establish the initial rent” but nowhere is D.H.P.D. authorized to increase the rents of those tenants in possession pursuant to an unexpired lease.
The statute clearly states that D.H.P.D. may “establish the initial rent”, notwithstanding local statutes and regulations concerning rent control, rent stabilization, etc.
However, in spite of its broad provisions, the statute does not also state “notwithstanding existing leases and agreements.”
If the Legislature meant to alter, modify or change the written terms of a lease, it would have certainly done so in clear and precise language.
Section 608 does not sanction the impairment of existing leases. The certification of rehabilitation and subsequent order do not terminate existing leases without the inclusion of a provision to that effect.
*585 The effect of section 608 is to treat the rehabilitated premises as a new building for purposes of establishing rental values. However, establishing new initial rents does not terminate existing leases! Rather, the increases in rent due to the landlord pursuant to a D.H.P.D. order are held in abeyance until the normal expiration of the existing lease. At the expiration of the lease, the landlord must offer the tenant a one- or two-year lease at the D.H.P.D. established rent level. (Private Housing Finance Law, § 608, subd 2.)
While it is true that the landlord has materially increased the value of the premises, he may not unilaterally alter the provisions and/or duties of the parties to a written lease, unless the lease provided for such a contingency. (Berfond v Hoffman, 65 Misc 2d 506 [App Term, 1st Dept], affd 36 AD2d 1022.)
The landlord contends that the lease did provide for increases granted by the C.A.B. or Rent Guidelines Board.
However, those agencies are not the same as the Department of Housing Preservation and Development which is the sole agency to set initial rents according to section 608 and 801 of the Private Housing Finance Law.
The provision for increasing the rent during the term may have envisioned a 10% or 15% increase due to a hardship case brought by the landlord or possibly for a capital improvement such as a $10 per month increase for installation of storm windows and screens.
But it was never the intention of the parties that the rent herein would be tripled during the lease term and that section 608 would apply. Also, the lease extension was executed in 1979 and the statute was not passed until 1981!
Moreover, the rule in this State is to construe a lease most favorably to the party not drafting it, and not to impose additional liabilities unless clearly provided for in the written instrument. (67 Wall St. Co. v Franklin Nat. Bank, 37 NY2d 245, citing 455 Seventh Ave. v Hussey Realty Corp., 295 NY 166.)
Therefore, this court finds that the current rent is $198.69 in accordance with the terms of the parties’ lease, *586 and that the “initial rent” established by D.H.P.D. in the sum of $586 be held in abeyance until the expiration of the lease. Petition is dismissed.