■ LONG ISLAND GYNECOLOGICAL SERVICES, P. C., Appellant-Respondent, v 1103 STEWART AVENUE ASSOCIATES LIMITED

PARTNERSHIP, Respondent-Appellant. [638 NYS2d 959] —In an action for a judgment, *inter alia,* declaring the parties' rights under a lease, the plaintiff appeals from so much of an order of the Supreme Court, Nassau County (DiNoto, J.), dated October 13, 1995, as denied its motion for a *Yellowstone* injunction and authorized the defendant to institute a summary proceeding for a warrant of eviction. The defendant (1) cross-appeals from so much of the same order as denied its cross motion to enjoin the plaintiff from performing any abortions during the pendency of this litigation, and (2) appeals from so much of an order of the same court dated March 20, 1995, as denied its cross motion to dismiss the second cause of action.

Ordered that the cross appeal is dismissed as abandoned; and it is further,

Ordered that the order dated October 13, 1995, is reversed insofar as appealed from, and the plaintiff's motion for a *Yellowstone* injunction is granted; and it is further,

Ordered that the order dated March 20, 1995, is affirmed insofar as appealed from, and it is further,

Ordered that the plaintiff is awarded one bill of costs.

The plaintiff, Long Island Gynecological Services, P. C. (hereinafter the tenant), provides gynecological services, including abortions, in premises that it leases in a building owned by the defendant, 1103 Stewart Avenue Associates Limited Partnership (hereinafter the landlord). As a result of the tenant's activities, the building became the subject of constant protests, threats, and acts of violence. On January 12, 1995, the landlord issued a rule, pursuant to paragraph 9A of the lease, that prohibited any tenant from engaging in any activity "which, in and of itself or through the related activities of others, (1) jeopardizes the safety or property of other tenants, their employees, and/or invitees or (2) interferes with the comfort, quiet and convenience of all occupants of the Building" (hereinafter the safety rule).

That same day, the landlord served the tenant with a notice of default for a violation of the safety rule and another rule pursuant to paragraph 9A of the lease promulgated June 28, 1994, which required all tenants, *inter alia,* "to maintain a waiting room sufficient for visitors, guests, and/or patients utilizing their space" and required visitors and patients to wait within the demised premises or outside the building (hereinafter the waiting-room rule). The notice of default allowed the tenant 30 days to cure its defaults, pursuant to paragraph 13 of the lease.

On February 13, 1995, after the 30-day cure period had

expired, the landlord delivered a notice of termination to the tenant. By order to show cause dated February 21, 1995, nine days after the 30-day cure period had expired, the tenant moved for a *Yellowstone* injunction (*see, First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630). In an order dated March 20, 1995, the Supreme Court indicated, *inter alia,* that it could not determine the motion without a hearing on whether the two rules were reasonably prescribed pursuant to paragraph 9A of the lease. A plenary hearing was held, without objection by the parties, wherein both sides presented witnesses and submitted documentary evidence.

By order dated October 13, 1995, the Supreme Court held that both the waiting-room rule and the safety rule were reasonably prescribed and, *inter alia,* denied the tenant's motion for a *Yellowstone* injunction.

We reverse the order dated October 13, 1995, insofar as appealed from by the tenant.

The purpose of a *Yellowstone* injunction is to allow a tenant confronted by a threat of termination of the lease to obtain a stay tolling the running of the cure period so that after a determination of the merits, the tenant may cure the defect and avoid a forfeiture of the leasehold (*see, Sportsplex of Middletown v Catskill Regional Off-Track Betting Corp.*, 221 AD2d 428; *Titleserv, Inc. v Zenobio*, 210 AD2d 311).

A tenant seeking *Yellowstone* relief must demonstrate that (1) it holds a commercial lease; (2) it has received from the landlord a notice of default, a notice to cure, or a threat of termination of the lease; (3) the application for a temporary restraining order was made prior to the termination of the lease; and (4) it has the desire and ability to cure the alleged default by any means short of vacating the premises (*see, First Natl. Stores v Yellowstone Shopping Ctr., supra; Matter of Langfur,* 198 AD2d 355; *Stuart v D & D Assocs.,* 160 AD2d 547). The courts have granted *Yellowstone* injunctions "routinely to avoid forfeiture of the tenant's interest and in doing so they [have] accepted far less than the normal showing required for preliminary injunctive relief" (*Post v 120 E. End Ave. Corp.,* 62 NY2d 19, 25; *Matter of Langfur, supra*).

By failing to seek a restraining order before the cure period has expired and before the landlord acted to terminate the lease—even though such an order was obtained between the time the notice of termination was served and its expiration date—a tenant divests the court of its power to grant a *Yellowstone* injunction (*see, Rappa v Palmieri,* 203 AD2d 270; *T. W. Dress Corp. v Kaufman,* 143 AD2d 900; *S. E. Nichols, Inc. v*

*American Shopping Ctrs.,* 115 AD2d 856; *Asherson v Schuman,* 106 AD2d 340). Accordingly, if a tenant's motion for a *Yellowstone* injunction is untimely, the tenant bears the risk that if it is determined after subsequent litigation that it was indeed in breach of its lease and the landlord proceeded in accordance with the lease, its leasehold would be lost without a further opportunity to cure.

Viewed within these guidelines, it is clear that the Supreme Court should have resolved the tenant's motion for a *Yellowstone* injunction by determining, as a threshold issue, whether it was timely made. Paragraph 13 of the lease gives a tenant 30 days to cure all defaults other than rent defaults, and it further provides for an unspecified longer cure period if such default "cannot be completely cured within thirty (30) days and [the tenant] thereafter proceeds with reasonable diligence and in good faith to cure such default".

The waiting-room rule was designed to prevent patients or escorts from loitering in the halls or from entering the waiting rooms or offices of the other tenants. The tenant does not contest the Supreme Court's determination that this rule was reasonably prescribed. However, the testimony adduced at the hearing indicates that upon being informed by the notice of default that it was in breach of this rule, the tenant made conscientious and expeditious efforts to install increased security and surveillance devices which would have enabled it to view the hallway and be alerted to patients or invitees who were loitering there. The record further demonstrates that although the tenant did not install these devices within 30 days of the notice of default, the delay was due to the landlord's insistence on a certain "building policy" requiring the submission of itemized estimates and a requirement that no work be done without "final written approval" and "direct supervision" of the building manager.

Accordingly, the tenant successfully demonstrated that it could not completely cure its alleged defaults within the 30-day cure period given by the landlord in its January 12, 1995, notice of default. The tenant was therefore entitled to more than 30 days to cure, and its motion for a *Yellowstone* injunction was, under the particular circumstances of this case, timely, and should have been granted.

With respect to the safety rule, we conclude, contrary to the Supreme Court's finding, that it was not "reasonably prescribed" pursuant to paragraph 9A of the lease. The landlord does not dispute that performing abortions is a permitted use under the terms of the lease. The landlord's submission in sup-

port of its cross motion and testimony adduced at the hearing, including, *inter alia*, that of the president of the landlord's general partner, demonstrates that the safety rule was solely intended to prohibit the performance of abortions in the leased premises. By promulgating this safety rule, the landlord has, in effect, unilaterally modified and altered the lease by prohibiting that use, and, such action is impermissible as a matter of contract law (*see, Bier Pension Plan Trust v Estate of Schneierson,* 74 NY2d 312; *Beacon Term. Corp. v Chemprene, Inc.,* 75 AD2d 350, 354; *Farrell Lines v City of New York,* 30 NY2d 76, 82; *Shore Terrace Realty Assocs. v Smosna,* 115 Misc 2d 581). Accordingly, as a matter of law, the safety rule cannot be used as a predicate for holding the tenant in default.

Finally, the landlord's contention concerning the order dated March 20, 1995, is without merit. Mangano, P. J., O'Brien, Thompson and Goldstein, JJ., concur.