[920 NYS2d 206]

GOLDCREST REALTY COMPANY, Respondent, v 61 BRONX RIVER
ROAD OWNERS, INC., Appellant.

Second Department, March 29, 2011

## APPEARANCES OF COUNSEL

*Smith, Buss & Jacobs, LLP*, Yonkers (*John J. Malley* of counsel), for appellant.

*Elefante & Persanis, LLP*, Eastchester (*Ralph Elefante* and *Tiffany Bauman* of counsel), for respondent.

## OPINION OF THE COURT

LOTT, J.

In *Korova Milk Bar of White Plains, Inc. v PRE Props., LLC* (70 AD3d 646 [2010]), this Court recently clarified that an application for a *Yellowstone* injunction (*see First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630 [1968]) not only must be made before the termination of the subject lease, but also must be made prior to the expiration of the cure period set forth in the lease and the landlord's notice to cure. The plaintiff in this case contends that this rule should not apply to applications for *Yellowstone* relief made by owners of unsold shares in residential cooperatives. We reject this contention.

## Factual and Procedural Background

The defendant is a residential housing cooperative that has owned an apartment building in Yonkers since the 1980s. The plaintiff is the sponsor of the cooperative and the holder of unsold shares allocated to 15 apartment units in the building.

On or about September 17, 2009, the defendant sent the plaintiff 15 separate notices of default, indicating that the plaintiff had failed to pay certain monthly maintenance charges corresponding to each of the 15 apartments, aggregating to the total sum of $22,688.11. Each of the notices demanded that the plaintiff cure that default by paying a specified sum on or before October 2, 2009, and stated that if the default were not cured by that date, the defendant would have the right to terminate the proprietary lease for each apartment and require the plaintiff to surrender possession of each of the apartments.

On or about October 5, 2009, the defendant sent the plaintiff 15 separate notices of termination. These notices indicated that the defaults identified in the notices of default had not been cured, and notified the plaintiff that pursuant to the terms of the proprietary lease for each apartment, the terms of each proprietary lease would expire on October 15, 2009. The notices of

termination stated that on October 15, 2009, the plaintiff must quit and surrender possession of each of the apartments to the defendant.

By summons dated October 8, 2009, the plaintiff commenced this action in the Supreme Court. In its complaint, the plaintiff alleged that it had made a series of "prepayments" of its maintenance charges over the past "several years," in the total sum of $61,763. Two of these payments were identified in the complaint—a payment of $8,604.30 made in 1984, and a payment of $28,500 made in 1987. The plaintiff alleged that the fact that the defendant owed the plaintiff a credit in the sum of $61,763 was reflected in the defendant's most recent financial statement. The plaintiff alleged that because it had prepaid its maintenance charges in the amount of $61,763, it was entitled to a credit in that amount, and was not in default of its monthly maintenance obligations. The plaintiff demanded a judgment declaring, among other things, that it had not violated the terms of the proprietary leases by failing to pay monthly maintenance charges.

By order to show cause dated October 14, 2009, the plaintiff moved for a *Yellowstone* injunction (*see First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630 [1968]), seeking to stay the termination of the proprietary leases during the pendency of this action. The plaintiff contended in the alternative that it was entitled to a preliminarily injunction enjoining the termination of the proprietary leases pursuant to CPLR 6301, pending disposition of the action. The Supreme Court granted the plaintiff's motion, rejecting the defendant's contention that the plaintiff's motion was untimely because it was made after October 2, 2009, the date of the expiration of the cure period set forth in the proprietary leases and the notices to cure. Citing *Purdue Pharma v Ardsley Partners* (5 AD3d 654 [2004]) and *Long Is. Gynecological Servs. v 1103 Stewart Ave. Assoc. Ltd. Partnership* (224 AD2d 591 [1996]), the Supreme Court suggested that a motion for *Yellowstone* injunction is timely so long as it is made prior to the termination of the lease, which in this case was to take place on October 15, 2009. The Supreme Court did not address the plaintiff's alternative contention that it was entitled to a preliminary injunction pursuant to CPLR 6301. The defendant appeals.

## Analysis

In *Post v 120 E. End Ave. Corp.* (62 NY2d 19, 24-26 [1984]), the Court of Appeals noted that

"*Yellowstone* injunctions became commonplace following [the Court of Appeals] decision in *First Nat. Stores v Yellowstone Shopping Center* (21 NY2d 630). That appeal involved a controversy between a landlord and a commercial tenant over which of them was required to bear the expense of a sprinkler system required by government orders. The landlord, contending that the cost properly belonged to the tenant, implemented provisions in the lease which provided that if the tenant did not cure a breach within 10 days the tenancy could be terminated. The tenant instituted legal proceedings but failed to obtain a temporary restraining order. Long before the dispute was legally resolved, the lease terminated because of the tenant's failure to cure or to toll the cure period. [The Court of Appeals] held that under such circumstances the courts were powerless to revive the expired lease. As a result, tenants developed the practice of obtaining a stay of the cure period before it expired to preserve the lease until the merits of the dispute could be settled in court . . . Whatever their merits, the courts have granted [*Yellowstone* injunctions] routinely to avoid forfeiture of the tenant's interest and in doing so they accepted far less than the normal showing required for preliminary injunctive relief. An applicant rarely has been required to demonstrate a likelihood of success, irreparable injury, and that the equities favored preliminary relief as those terms are traditionally understood. Indeed, the courts have not professed to require such evidence. The threat of termination of the lease and forfeiture, standing alone, has been sufficient to permit maintenance of the *status quo* by injunction." (Citations omitted.)

In *Korova Milk Bar of White Plains, Inc. v PRE Props., LLC* (70 AD3d 646 [2010]), this Court recently clarified that

"[s]ince 'courts cannot reinstate a lease after the lapse of time specified to cure a default' (*Goldstein v Kohl's*, 16 AD3d 622, 623 [2005]), an application for *Yellowstone* relief must be made not only before the termination of the subject lease—whether that termination occurs as a result of the expiration of the term of the lease, or is effectuated by virtue of

the landlord's proper and valid service of a notice of termination upon the tenant after the expiration of the cure period—but must also be made prior to the expiration of the cure period set forth in the lease and the landlord's notice to cure" (*id*. at 647; *see also Xiotis Rest. Corp. v LSS Leasing Ltd. Liab. Co.*, 50 AD3d 678, 679 [2008]; *Hempstead Video, Inc. v 363 Rockaway Assoc., LLP*, 38 AD3d 838 [2007]; *Gihon, LLC v 501 Second St.*, 306 AD3d 376 [2003]).

In *Korova Milk Bar,* this Court "expressly reject[ed]" the construction of any of its prior decisions, including *Purdue Pharma v Ardsley Partners* (5 AD3d 654 [2004]) and *Long Is. Gynecological Servs. v 1103 Stewart Ave. Assoc. Ltd. Partnership* (224 AD2d 591 [1996]), the two cases cited by the Supreme Court in this case, as fixing a different or longer period of time in which an application for *Yellowstone* relief must be made (*see Korova Milk Bar of White Plains, Inc. v PRE Props., LLC*, 70 AD3d at 648). The Appellate Division, First Department, has also recently rejected the argument that a *Yellowstone* motion brought after the expiration of the applicable cure period may be deemed timely as long as it is made before the lease in question is actually terminated (*see KB Gallery, LLC v 875 W. 181 Owners Corp.*, 76 AD3d 909 [2010]).

Here, although the plaintiff's application for *Yellowstone* relief, on October 14, 2009, was made one day before the termination of the lease as provided in the notice of termination, it was made well after October 2, 2009, the expiration of the cure period. Thus, following the rule of *Korova Milk Bar,* the application was clearly untimely.

The plaintiff contends that a different rule should apply in this case because this case involves proprietary leases in a residential cooperative, as opposed to a commercial lease like the one in *Korova Milk Bar*. Contrary to the plaintiff's contention, there is no authority for this proposition. While the Appellate Division, First Department, in *Zuckerman v 33072 Owners Corp.* (97 AD2d 736 [1983]), concluded that it had jurisdiction to grant a *Yellowstone* injunction after the expiration of a cure period set forth in a notice to cure, it did not do so on the ground that the case involved a proprietary lease in a residential cooperative. Rather, it did so on the ground that "the parties having participated from the outset in extensive settlement negotiations which continued even beyond the argument of this appeal, and in which respondent offered terms of settlement of the sublease dispute, the parties have set a new period in which the

defect may be cured" (*id.* at 738). Here, there is no evidence that the parties engaged in settlement negotiations or set a new period in which the defect may be cured.

There is also no authority for the plaintiff's contention that a conditional limitation in a proprietary lease providing for forfeiture of the tenancy upon the nonpayment of rent is void as against public policy. *Runes v Douglas Elliman-Gibbons & Ives* (83 AD2d 805 [1981]), which is cited by the plaintiff for this proposition, suggests no such thing. While the *Runes* Court noted that RPAPL 751 (1) allows a tenant to stay the issuance of a warrant in a summary nonpayment proceeding by paying the amount owed into court prior to the issuance of a warrant, the landlord in that case, instead of commencing a summary nonpayment proceeding, elected, as the defendant did in this case, to treat the failure to pay as a default in complying with a substantial covenant of the lease, and served a notice to cure (*id.*). The *Runes* Court did not suggest that this was against public policy. Rather, it granted the plaintiff's motion for a *Yellowstone* injunction, which—unlike in this case—was made prior to the expiration of the cure period (*id.*) The *Runes* Court noted that absent a *Yellowstone* injunction, the plaintiff's failure to cure the alleged defect within the time specified would terminate the lease (*id.*). Moreover, while the Appellate Term, First Judicial Department, in *Park Summit Realty Corp. v Frank* (107 Misc 2d 318 [1980], *affd for reasons stated below* 84 AD2d 700 [1981], *affd on other grounds* 56 NY2d 1025 [1982]), suggested that a nonpayment proceeding is the exclusive vehicle available to a landlord pursuing a tenant who has defaulted on his rent for an extended period of time, the Court of Appeals suggested the opposite, affirming on the ground that a "notice to cure was required whether the proceeding be as a holdover after termination of tenancy or as a nonpayment proceeding" (56 NY2d at 1026 [citations omitted]).*

As stated by this Court in *Hopp v Raimondi* (51 AD3d 726 [2008]),

> "[t]he 1982 enactment of RPAPL 753 (4), which affords a losing residential tenant a 10-day period to cure lease violations before being subject to removal,

---

* The Appellate Term stated that "the policies underlying passage of the rent stabilization laws are generally better served by holding out to the tenant the opportunity usually afforded in a nonpayment proceeding to cure the breach of his rent obligations" (107 Misc 2d at 323).

has largely eliminated the need for *Yellowstone* injunctions in New York City . . . However, since RPAPL 753 (4) applies only in New York City, elsewhere in the state 'the only time available to a residential tenant within which a lease violation may be cured is the time provided in the notice to cure' (*Landmark Props. v Olivo*, 10 Misc 3d 1, 2 [2005]). Thus, '[o]utside the City of New York, the only means to extend the time to cure is injunctive relief . . . which relief must be sought within, and must operate to toll, the cure period provided by lease provision or predicate notice . . . *before* this period runs and the lease terminates. Otherwise, the courts are powerless to revive the expired lease' (*id.*)." (*Id.* at 727-728.)

Since the plaintiff did not seek *Yellowstone* relief within the cure period, the Supreme Court improperly granted this relief.

As an alternative to *Yellowstone* relief, the plaintiff also sought a preliminary injunction pursuant to CPLR 6301. However, we agree with the Appellate Division, First and Third Departments, that motions for preliminary injunctions pursuant to CPLR 6301, like motions for *Yellowstone* injunctions, must also be made prior to the expiration of the cure period (*see R.P.S.P. Pasta Corp. v Tor Val.*, 229 AD2d 783, 784 [1996]; *B. Boman & Co. v Professional Data Mgt.*, 218 AD2d 637, 637-638 [1995]; *Manhattan Parking Sys.-Serv. Corp. v Murray House Owners Corp.*, 211 AD2d 534, 535 [1995]).

Accordingly, the Supreme Court should have denied the plaintiff's motion for a *Yellowstone* injunction. The order is reversed, on the law, and the plaintiff's motion for a *Yellowstone* injunction is denied.

SKELOS, J.P., DICKERSON and ENG, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the plaintiff's motion for a *Yellowstone* injunction is denied.