■ EMPIRE STATE BUILDING ASSOCIATES et al., Appellants-Respondents, v TRUMP EMPIRE STATE PARTNERS et al., Respondents-Appellants. [667 NYS2d 31] —Order, Supreme Court, New York County (Edward Lehner, J.), entered October 29, 1996, which sub silentio granted plaintiffs' motion for reargument of the April 11, 1996 order insofar as it had denied plaintiffs' motion for a *Yellowstone* injunction with respect to a notice of default dated February 20, 1996 and, upon reargument, adhered to the prior determination, and granted defendants' motion to dismiss those portions of plaintiffs' first amended complaint that sought a *Yellowstone* injunction, unanimously reversed, on the law, with costs payable to plaintiffs, plaintiffs' motion for a *Yellowstone* injunction granted, defendants' motion to dismiss denied in its entirety and said part of the complaint reinstated.

Order, same court and Justice, entered April 11, 1996, which, insofar as appealed from by defendants, granted plaintiffs' motion for injunctive relief under CPLR 6301 to the extent of enjoining defendants from taking any action pursuant to a notice of termination dated February 27, 1996 other than to litigate, in this action, the right to terminate the lease pursuant to said notice, unanimously affirmed, with costs payable to plaintiffs. Plaintiffs' appeal from the aforesaid order dismissed as moot.

Plaintiffs Empire State Building Associates and Empire State Building Company (collectively Empire) are the net lessee and operating sublessee of the Empire State Building. Defendant Trump Empire State Partners, of which defendant Trump Empire State, Inc. is a partner (collectively, Trump), is, at least for the purposes of this litigation,[1] the owner of the building and Empire's landlord.

At issue on this appeal is one of a series of default notices sent by Trump in a continuing effort to remove Empire from

---

1. The complaint alleges that there is a dispute over the fee title to the building.

the property. The first two notices both included claims concerning the air conditioning system of the building as it relates to Local Laws, 1973, No. 5 of City of New York, which generally requires that commercial office buildings built before 1973 either have an automatic sprinkler system or be "compartmentalized", which would require, *inter alia*, that air conditioning units for each floor actually be located on that floor. The building, which is not sprinklered, is also not compartmentalized as to its first five floors or as to the 86th floor, which contains the observation deck and is serviced by an air conditioning unit located two stories above it. Although the building received a variance from Local Law No. 5 in or around 1981, Trump has taken the position throughout its efforts to evict Empire that, in spite of the variance, the configuration of the air conditioning system for the 86th floor was in violation of law.

The notice of default at issue on this appeal, dated February 20, 1996, did not directly allege that the building's air conditioning system violated the law, but, instead, briefly and rather obliquely alleged that Empire had violated the compliance with law provisions of the lease by filing false and fraudulent documentation with the Buildings Department relating to obtaining the variance, since that documentation indicated that above the fifth floor, the building had separate air conditioning and air handling systems for each individual floor. The notice did not specify what documents contained the alleged falsity and did not specify that the alleged falsity concerned the air conditioning system for the 86th floor. Upon receiving the notice of default, Empire immediately responded with a letter informing Trump that it was investigating the purported default. Nevertheless, a Notice of Termination was sent by Trump on February 27, 1996 based on the same alleged breach.

Empire moved for relief pursuant to *First Natl. Stores v Yellowstone Shopping Ctr.* (21 NY2d 630), i.e., for a *"Yellowstone* injunction", alleging that, although the notice of default had not cited a particular document that was alleged to be false, it believed that the basis of Trump's allegation was a building plan filed in 1980 on behalf of the building in connection with the application for the variance that contained the statement: "All floors above 5 have single floor air conditioning with no air handling ducts piercing floors". Although, as noted above, the air conditioning equipment for the 86th floor is actually two stories above the 86th floor, in Empire's view the documentation was not inaccurate since the area from level 87 to level

102 of the building, which houses only machinery and equipment, is referred to as "the Tower," and contains no "floors" as that term is used in the Certificate of Occupancy, i.e., levels containing commercially leased space. In addition, as noted by Empire, the same document that contained the language that Trump referred to as false and fraudulent also accurately indicated that the "Dressing Rm. & Tower Machine Rm." for the 86th floor Observatory were located on the 88th floor.

By decision and order entered April 11, 1996, the IAS Court denied *Yellowstone* relief upon the ground that the notice of default did not offer Empire any opportunity to cure the supposed default and it could not toll a cure period that did not exist. The IAS Court, however, afforded Empire much the same relief that it would have received via a *Yellowstone* injunction by preliminarily enjoining the termination of the lease to the extent of directing that: "pending further order of the court, defendants shall take no action pursuant to the notice of termination issued by Trump dated February 27, 1996 other than to litigate in this action the right to terminate the lease pursuant to the aforesaid notice." In addition, the IAS Court granted Empire permission to file an amended complaint. By order entered October 29, 1996, the IAS Court, while not specifically granting Empire's motion for reargument, readdressed the rationale for its decision denying *Yellowstone* relief and adhered to that decision and also granted Trump's motion to dismiss those portions of the first amended complaint that sought *Yellowstone* relief.

Both parties now appeal the court's orders, Empire to the extent that it was denied *Yellowstone* relief and to the extent that portions of the first amended complaint seeking such relief were dismissed, and Trump to the extent that Empire was granted ordinary preliminary injunctive relief.

The purpose of a *Yellowstone* injunction is to allow a tenant confronted by a threat of termination of the lease to obtain a stay tolling the running of the cure period so that, after a determination of the merits, the tenant may cure the defect and avoid a forfeiture of the leasehold (*First Natl. Stores v Yellowstone Shopping Ctr., supra; Long Is. Gynecological Servs. v 1103 Stewart Ave. Assocs.*, 224 AD2d 591; *Garland v Titan W. Assocs.*, 147 AD2d 304; *Mann Theatres Corp. v Mid-Island Shopping Plaza*, 94 AD2d 466, 475, *affd for reasons stated below* 62 NY2d 930). In order to obtain a *Yellowstone* injunction, the commercial tenant must demonstrate that: (1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of

the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises (*First Natl. Stores v Yellowstone Shopping Ctr.*, *supra*; *Long Is. Gynecological Servs. v 1103 Stewart Ave. Assocs.*, *supra*, 224 AD2d, at 593; *225 E. 36th St. Garage Corp. v 221 E. 36th Owners Corp.*, 211 AD2d 420, 421; *Stuart v D&D Assocs.*, 160 AD2d 547, 548).

At the outset, we find no merit to the argument that because Trump did not set forth a specific period in which Empire could cure the alleged violation, *Yellowstone* relief must be denied. The existence of a period in which a violation may be cured does not depend on the contents of the notice of default, but upon the terms of the lease. Thus, while the failure to state the cure period may render the notice defective (*Filmtrucks, Inc. v Express Indus. & Term. Corp.*, 127 AD2d 509), it does not vitiate the cure period itself. Here, section 19.01 (c) of the lease states, in pertinent part, that the lease may be terminated: "(c) if default shall be made by the Lessee in keeping, observing or performing any of the terms, covenants, agreements, provisions, conditions or limitations contained in this Lease on Lessee's part to be kept, observed or performed * * * which do not expose the Lessor to criminal liability *and such default shall continue for a period of sixty (60) days after written notice thereof from Lessor to Lessee,* or in the case of such a default or contingency which cannot with due diligence and in good faith be cured within sixty (60) days, the Lessee fails to proceed promptly and with due diligence and in good faith" (emphasis supplied).

Nor is there merit to Trump's claim that the 60 day cure period set forth in subparagraph (c) does not apply because the breach alleged, i.e., Empire's filing of purportedly false information, "exposed [Trump, as] Lessor, to [potential] criminal liability" under Penal Law § 175.00 *et seq.*, prohibiting the filing of false instruments. Trump has not even attempted to set forth a rationale under which it could be held criminally liable for Empire's supposed violation, which, if it occurred at all, occurred years before Trump had any connection whatsoever with the building. In any case, even if this alleged default could subject Trump to criminal liability, this would not mean that there was no opportunity to cure. Although subparagraph (d), which gives the lessor the right to terminate the lease in the event of a default that subjects it to criminal liability, merely requires the tenant to act promptly and contains no specific time period in which to cure, it should be presumed to

afford the tenant a reasonable time in which to do so (*see, Total Spectrum Mfg. v Frassetto*, 172 AD2d 747). Clearly, seven days, which is the length of time Trump waited between serving the notice of default and serving the notice of termination, does not constitute a reasonable period in which to address the violation alleged in this matter. Moreover, it is clear that Empire did in fact respond promptly to the notice of default by taking immediate action to try to ascertain precisely what Trump was referring to with respect to the allegedly false representation it had made and the document in which it was claimed to have been made.

Trump also argues that neither cure period is applicable because the violation, which refers only to a past event that cannot be changed, is not curable. However, even assuming arguendo that an error in filing was committed and that it would give rise to a right of termination, the error could potentially be cured by resubmitting the correct information or altering the structure. While these cures cannot "undo" the filing of purportedly inaccurate information, it is not necessary, in order to cure, that a tenant show that it is able to erase the past, as long as it can show that it is able to bring itself into compliance with the lease without vacating the premises (*see, Herzfeld & Stern v Ironwood Realty Corp.*, 102 AD2d 737, 738-739; *cf., Childress v Lipkis*, 72 AD2d 724). Particularly in light of the guiding principle that equity abhors a forfeiture (*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 695; *Fifty States Mgt. Corp. v Pioneer Auto Parks*, 46 NY2d 573, 577), we find no basis to follow Trump's lead in eagerly jumping at any opportunity to define as "incurable" violations that may, as a practical matter, be quite adequately addressed.

We also reject Trump's alternative and thoroughly spurious contention that *Yellowstone* relief was inappropriate because the lease was terminated prior to Empire's motion for injunctive relief. Since Trump served the notice of termination before the expiration of the operable cure period, it was obviously ineffective (*see, Long Is. Gynecological Servs. v 1103 Stewart Ave. Assocs., supra*, 224 AD2d, at 594; *225 E. 36th St. Garage Corp. v 221 E. 36th Owners Corp., supra*). It would hardly serve the purposes underlying the *Yellowstone* injunction to permit a landlord to cut short the cure period by prematurely serving the notice of termination.

Finally, we note that additional support for *Yellowstone* relief is found in the fact that the notice of default, which consisted of a brief statement that Empire violated article 8 of the lease by filing unspecified false and fraudulent papers in relation to

the Local Law 5 variance, was so vague and ambiguous as to be ineffective (*see, Garland v Titan W. Assocs., supra*, 147 AD2d, at 310-311).

For these reasons, we find that *Yellowstone* relief tolling Empire's time to cure pursuant to the notice of default should be granted.

Also at issue is the preliminary injunction enjoining the termination of the lease granted to Empire pursuant to CPLR 6301. As to this injunction, we find that Trump has presented no rationale for vacatur.[2] Empire clearly demonstrated a likelihood of success on the merits and, in that regard, we take note not only of the significant deficiencies apparent in the notice of default, but of the extremely tenuous nature of the alleged default itself. There appears little likelihood that there will be a finding that the application for the variance filed with the Department of Buildings in 1980 was a material violation of the lease. We note in this context that Empire alleges, and Trump does not dispute, that after extensive Buildings Department investigations, no violations were found.

Furthermore, the harm to Empire from losing the lease could well be irreparable, since it is difficult to imagine how damages could adequately compensate Empire for the value of the approximately 79 years remaining under the lease and its potential renewals in a building of such notable character as the Empire State Building. Finally, the equities clearly appear to run in Empire's favor. Concur—Murphy, P. J., Rosenberger, Ellerin, Rubin and Tom, JJ.

---

2. While the relief afforded pursuant to such an injunction is, as a practical matter, a substitute for a *Yellowstone* injunction, Trump does not oppose Empire's arguments for reversal on that ground.