**In re 2300 XTRA WHOLESALERS, INC., Debtors.**

**Condal Distributors, Inc. and Condal Imports, Inc., Appellants,**

v.

**2300 Xtra Wholesalers, Inc. and Randall Meat Market, Inc., Appellees.**

**Nos. 10 Civ. 7292 (PKC), 10 Civ. 7293 (PKC).**

**Nos. 10–12280 (ALG), 10–12915 (ALG).**

United States District Court, S.D. New York.

Jan. 14, 2011.

Joseph Alan Altman, Altman & Altman, Bronx, NY, for Condal Distributors, Inc., Condal Imports, Inc.

Neal M. Rosenbloom, Goldberg Weprin Finkel Goldstein LLP, New York, NY, for 2300 Xtra Wholesalers, Inc., Randall Meat Market, Inc.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Appellants Condal Distributors, Inc. and Condal Imports, Inc. (collectively, "Condal") have appealed two orders of the Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"), Allan L. Gropper, U.S.B.J. The first appeal is directed to the Bankruptcy Court's denial of Condal's motion to lift the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362, as it applies to Condal's commercial lease with debtor 2300 Xtra Wholesalers, Inc. ("Xtra"). *See* 10 Civ. 7292 (Docket # 1). Condal separately appeals an order of the Bankruptcy Court that approved, pursuant to 11 U.S.C. §§ 363 and 365, Xtra's sale of that same commercial lease. *See* 10 Civ. 7293 (Docket # 1).

For the reasons explained below, the Bankruptcy Court's enforcement of the automatic stay provision is affirmed. The Bankruptcy Court's order pursuant to 11 U.S.C. §§ 363 and 365 also is affirmed.

### I. *Standard of Review.*

A bankruptcy court's legal conclusions are reviewed *de novo. In re Zarnel,* 619 F.3d 156, 161 (2d Cir.2010). Its factual determinations are reviewed for clear error. *In re Penn Traffic Co.,* 524 F.3d 373, 378 (2d Cir.2008); Rule 8013, Fed. R. Bankr.P.

### II. *The Bankruptcy Court's Enforcement of the Automatic Stay Provision is Affirmed.*

According to Condal, the Bankruptcy Court erred in concluding that 11 U.S.C. § 362(b)(10) did not exempt Xtra from enforcement of the automatic bankruptcy stay. Separately, it argues that 11 U.S.C. § 362(e)(1) required the stay to be vacated, because the Bankruptcy Court did not rule on the stay's enforcement within 30 days of Condal's motion. For the reasons explained below, the Bankruptcy Court's order is affirmed, and Condal impliedly waived the application of section 362(e).

#### A. *The Parties' Pre-Bankruptcy Litigation.*

Condal is the landlord of a single-story, 35,000–square foot commercial property located at 2300 Randall Avenue, Bronx, New York (the "Property"). (A.176.)[1] In April 1992, Condal and Xtra entered into an

---

1. I note at the outset all parties' practice of citing to legal argument presented to the Bankruptcy Court as a substitute for citing actual evidence contained in the record. At times, key factual assertions are afforded no citation at all. Further, the 749–page record provided by appellants contains no guide as to its contents and lacks organizational coherence. Although few of the underlying facts are in dispute, the parties' failure to submit and rely upon an adequate record has unnecessarily complicated the Court's task and, as a result, wasted its judicial resources.

agreement for a lease of the Property. (A.245–50.) In the succeeding years, Xtra operated a supermarket and dry foods warehouse on the Property, as was consistent with the terms of the lease. (A.511.) Randall Meat Market, Inc. ("Randall") is an affiliate of Xtra, and it operated the supermarket located on the Property; Randall is not a tenant under the lease. (A.176.)

Beginning in 2008, the parties engaged in a series of litigations about Xtra's performance under the lease. Condal contends that Xtra's lease is a "lease of nonresidential real property that has terminated by the expiration of the stated term," and, thus, the Bankruptcy Code's automatic stay provision does not apply to these lawsuits, At 11 U.S.C. § 362(b)(10), the Bankruptcy Code states:

> The filing of a petition under section 301, 302, or 303 of this title … does not operate as a stay … under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property ….

There is no dispute that the lease is a nonresidential lease within the meaning of the statute. Hence, the exemption from the automatic bankruptcy stay depends on whether Xtra's lease from Condal expired prior to commencement of the bankruptcy proceedings.

According to Condal, in February 2008, Xtra violated the lease when it attempted to sublet the Property to non-party OJ Resources, Inc. ("OJ"). (A.257–74.) The debtors contend that the subletting ar-

rangement was part of a $4.5 million transaction with OJ, wherein OJ purchased Xtra's supermarket business, plus inventory. (Opp. Mem. at 4; A. 257–74.) When Condal informed Xtra that it objected to the sublease to OJ, Xtra pursued declaratory relief in the New York Supreme Court, Bronx County, seeking a declaration that the arrangement was lawful. (A.194–97.) The New York Supreme Court denied the requested relief without prejudice to renewal, observing that the lease permitted Xtra to sublet the property with Condal's written consent, which was not to be unreasonably withheld, provided that Xtra could furnish satisfactory financial information about the sublessee. (A.194–97.) Because Xtra and Randall failed to establish compliance with the lease, however, the court denied Xtra's application for declaratory relief.[2] (A.194.) Xtra and OJ then entered a management agreement that transferred management and possession of the Property to OJ. (A.199–205.)

In May 2008, Condal served Xtra with a notice of default under the lease, asserting that Xtra failed to maintain the Property, failed to tender timely rent payments and made unapproved alterations to the Property. (A.207–09.) That notice of default prompted Xtra to commence a so-called "Yellowstone proceeding" in the New York Supreme Court, Bronx County. (A.177.) A Yellowstone proceeding, which takes its name from First National Stores, Inc. v. Yellowstone Shopping Center, Inc., 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968), permits a tenant threatened with the termination of a lease to seek an injunction "to obtain a stay tolling the running of the cure period so that, after a determination of the merits, the tenant

---

**2.** Throughout its papers, Condal erroneously asserts that this order barred Xtra from subletting and/or assigning the lease to OJ. The order did no such thing. Instead, it denied

Xtra declaratory relief without prejudice to renewal, and did not ultimately rule on whether the OJ arrangement was either lawful or unlawful.

may cure the defect and avoid a forfeiture of the leasehold." *Empire State Bldg. Assocs. v. Trump Empire State Partners*, 245 A.D.2d 225, 227, 667 N.Y.S.2d 31 (1st Dept. 1997). The parties agreed to settle the *Yellowstone* proceeding, and executed a stipulation of settlement on February 24, 2009. (A.738–749.) The stipulation set forth schedule rent payments and required Xtra to make certain specified repairs to the Property. (A.738–49.)

Meanwhile, according to Xtra, OJ was in default under its management agreement, prompting Xtra to terminate the agreement with OJ and commence ejection proceedings against OJ in the Civil Court, Bronx County. (Opp. Mem. at 6.) According to Xtra, it prevailed in its litigation with OJ. (Opp. Mem. at 6.) On April 22, 2010, Xtra states, "the marshal executed upon a warrant of eviction against OJ," thereby returning the Property to Xtra and Randall, which have since remained in possession of the Property. (Opp. Mem. at 6.)

While the dispute between Xtra and OJ was pending, Condal commenced a holdover eviction proceeding against Xtra and Randall. (A.354.) According to Xtra, it never received "actual notice" of the proceeding, and a judgment of default was entered against it. (A.354–55.) Upon application, Xtra and Randall were granted an order vacating the default. (A.354–56.) A trial on the merits between Xtra and Condal took place on April 26, 2010, after which the Civil Court of the City of New York, Bronx County awarded judgment to Condal, directed Xtra and Randall to vacate the Property, and granted a money judgment of $238,329 against Xtra. (A.189–190, 349–53.) It orally held that Xtra had not complied with the stipulation of settlement of February 24, 2009, in part because "the tenant had to do so many things, and all along my impression was he basically

did none of them." (A.351.) The Civil Court also noted that OJ "doesn't seem to be particularly responsible" and that it contributed to Xtra's failure to perform under the settlement stipulation. (A.350.)

### B. *The Bankruptcy Court's Enforcement of the Automatic Stay.*

On April 29, 2010, Xtra filed a voluntary Chapter 11 petition. Randall filed its petition on May 28. On June 10, 2010, Condal moved in Bankruptcy Court for an order holding that, pursuant to section 362(b)(10), the automatic bankruptcy stay did not apply, or that, alternatively, the Bankruptcy Court should vacate the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2). In an oral ruling, the Bankruptcy Court held that Condal had not obtained a warrant of eviction against Xtra, and that no notice of entry was served on Xtra until May 1, which post-dated Xtra's bankruptcy petition. (A.653.) As a result, the Bankruptcy Court concluded, section 362(b)(10) did not exempt Xtra from the automatic stay.

The Bankruptcy Court noted that a lease's termination is resolved by applicable non-bankruptcy state law. (A.654.) As stated by the Bankruptcy Court: "it is settled that the automatic stay remains in effect when the debtor has the opportunity to appeal a state court decision or otherwise seek review thereof." (A.655, citing *In re Stoltz*, 197 F.3d 625, 630 (2d Cir. 1999).) It observed that Xtra had not appealed the Civil Court judgment of April 26, which ordered vacation of the premises, and that the time to appeal had not yet lapsed. (A.655.) Moreover, Xtra did not receive notice of entry of state court judgment until after filing of the Chapter 11 petition. (A.655.)

The Bankruptcy Court stated that a "tenant's ability to stave off an eviction by virtue of a bankruptcy filing is not unlimited," and that the automatic stay is intend-

ed to permit a debtor to pursue remedies in bona fide state court proceedings. (A.656.) It observed as follows: "In this case, the tenant has made a sufficient showing of its ability as a consequence of what appears to be a serious contract to sell the lease to cure all arrears. Whether this is enough to obtain vacator of the judgment of possession is a matter for the state courts." (A.656.)

In addition, the Bankruptcy Court held that the lease had not been terminated within the meaning of section 362(b)(10) because Condal did not obtain a warrant of eviction, as New York law requires. Section 749(3) of New York's Real Property Actions and Proceedings Law states:

> The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.

Relying on this provision, and other New York authority, the Bankruptcy Court held that "[i]t appears well-established under New York law" that an adverse judgment or execution of a warrant is not sufficient to terminate a lease, and that only issuance of a warrant "effects the cancellation." (A.657.) Because no such warrant was issued, the Bankruptcy Court held that the Property's lease was not terminated within the meaning of section 362(b)(10). (A.658–59.)

The Bankruptcy Court separately denied Condal's motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2). Section 362(d)(1) permits relief from the stay "for cause," and section 362(d)(2) applies to a stay against property if, among other things, the property "is not necessary to an effec-tive reorganization...." The Bankruptcy Court concluded that, as to section 362(d)(2), the lease appeared to be the debtors' sole asset. (A.659.) In addition, it noted, Xtra had paid post-petition rent to Condal, and presented evidence of a contract to sell the lease to a third party that would cure Xtra's defaults and pay its unsecured debt. (A.659.) As a result, "[t]he landlord has not established that cause exists to terminate the automatic stay at this early stage of the case." (A.659.)

### C. *The Bankruptcy Court's Order as to Section 362(b)(10) Affirmed.*

■ The Bankruptcy Court's order is consistent with the text of N.Y. R.P.A.P.L. § 749(3). It also is consistent with New York authority applying the same statute. *See, e.g., Weichert v. O'Neill,* 245 A.D.2d 1121, 1122, 667 N.Y.S.2d 527 (4th Dept. 1997) (issuance of warrant terminates real property lease as a matter of law); *105 Franklin St. Corp. v. Seratoff,* 284 A.D. 262, 263, 131 N.Y.S.2d 257 (1st Dep't 1954) ("It has commonly been held that the final order in summary proceedings does not terminate the relationship of landlord and tenant and that the point of termination occurs upon the issuance of the warrant which gives possession to the landlord. Until that time the summary proceeding is still deemed pending."). In applying section 749(3) and 11 U.S.C. § 362(b)(10), bankruptcy courts have reached the same conclusion as the Bankruptcy Court in this case. *See, e.g., In re Griggsby,* 404 B.R. 83, 92 (Bankr.S.D.N.Y.2009) (issuance of a warrant of eviction severs a landlord-tenant relationship under New York law, but even then, a debtor may maintain an equitable interest in the property, and the automatic stay will apply if vacatur of judgment remains possible in a state tribunal); *In re Butler,* 14 B.R. 532 (S.D.N.Y. 1981) (N.Y. R.P.A.P.L. § 749(3) requires a

warrant of eviction in order to terminate lease, the issuance of which is stayed by the filing of a bankruptcy petition and the Bankruptcy Code's automatic stay provision); *cf. In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir.1987) ("[A] mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of an automatic stay."); *In re Marcano*, 288 B.R. 324, 338 (Bankr.S.D.N.Y.2003) ("In appropriate cases, bankruptcy courts have continued the automatic stay of § 362 in order to give the tenant an opportunity to seek an order from the state court vacating a warrant of eviction.").

Condal has not come forward with a meaningful basis to distinguish or depart from these rulings. It merely asserts that the First Department's holding in *105 Franklin Street*, 284 A.D. at 263, 131 N.Y.S.2d 257, has been implicitly overruled by the availability of a *Yellowstone* proceeding, Condal offers no authority to support this proposition, and the Court's own research revealed none. Further, the reasoning of *105 Franklin Street* is consistent with more recent judicial interpretations of section 749(3), such as the *Griggsby* decision of 2009 and the *Weichert* decision of 1997. Separately, Condal cites to a treatise on New York landlord-tenant law for the principal that a *Yellowstone* proceeding allows a commercial tenant confronted with the threat of a lease termination to cure any default and avoid forfeiture of the leasehold. *See* 2 Rasch, *New York Landlord and Tenant*, § 23:53. at 214–15 (4th ed. 1998). This provision appears irrelevant to any grounds for vacating the Bankruptcy Court's order. In addition, the Bankruptcy Court relied on a separate portion of the Rasch treatise, which states that issuance of an eviction warrant, as opposed to entry of judgment or execution of a warrant, effects a lease's cancellation. (A.657.)

I affirm the Bankruptcy Court's order concluding that 11 U.S.C. § 362(b)(10) does not apply to the automatic stay provision, and that the stay remains in effect.

### D. *Condal Impliedly Waived Application of Section 362(e)(1).*

■ Separately, Condal argues that the automatic stay is terminated pursuant to 11 U.S.C. § 362(e)(1), which provides for the termination of the automatic stay if a bankruptcy court does not hold a hearing within 30 days of a motion for relief from the stay. The provision states in full:

Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30–day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

Condal filed its motion directed to the bankruptcy stay on June 10, 2010. (A.172–74.) The Bankruptcy Court issued its oral ruling concerning the stay on August 5, and subsequently issued a written order on August 25. (A.6–7, A.19–43.) The Bankruptcy Court held preliminary hearings on June 30 and July 21, but did not explicitly state that the automatic stay was to remain in effect. (Opp. Mem. at 18.) Counsel to Condal attended those hearings.

The Second Circuit has described the Bankruptcy Code's automatic stay, and the function of section 362(e), as follows:

> The House and Senate reports both likened an automatic stay and a subsequent motion under the new § 362(e) to the stages of an injunction in an ordinary civil case. Thus, the filing of a petition in bankruptcy is equivalent to a temporary restraining order, the preliminary hearing on a motion for relief from the stay is similar to a hearing on a preliminary injunction, and the decision as a result of the final hearing on the motion for relief is equivalent to a permanent injunction

*In re Chateaugay Corp.*, 880 F.2d 1509, 1512 (2d Cir.1989). Court have often found implied waiver by a party that belatedly asserts that a bankruptcy court failed to *sua sponte* lift a stay pursuant section 362(e). In *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982), the court concluded that the party seeking to terminate the stay waived any objections to the failure to hold a preliminary hearing within 30 days when its motion for relief from the automatic stay proceeded to trial in the bankruptcy court. *See also In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 698–99 (3d Cir.1989) (collecting cases on implied waiver, though concluding that no implied waiver arose when movant's actions were consistent with a 30–day window); *In re SeSide Co.*, 155 B.R. 112, 116 (E.D.Pa.1993) (party's consent to extended briefing schedule was "inconsistent with an intent on its part to insist that the court enter either a final order or an order continuing the stay pending conclusion of a final hearing within thirty days of its initial request."). *In re Aulicino*, 400 B.R. 175, 179–80 (Bankr. E.D.Pa.2008), held that section 362(e) did not require termination of the automatic stay, even though a preliminary hearing was not held within 30 days of a motion to terminate. The *Aulicino* court had expressly stated that the statutory period would not run during the briefing schedule, but added:

> What would have been the point of ordering a 30 day briefing schedule if the stay was to expire almost immediately. It is counterintuitive for Movant to submit a 58–page brief and expect the court in the interests of justice to rule in a matter of days absent which the stay would terminate by operation of law. Even had I not expressly dealt with this issue on the record, I would deem him to have consented to the tolling of the period until his brief was received on November 4, 2008. In short, the stay has not been terminated by operation of § 362(e)(2).

*Id.* (internal citation omitted). The court further noted that even if the stay had terminated as a matter of law, it had the equitable power to reinstate the stay. *Id.* at 180 n. 2 (citing 11 U.S.C. § 105).

Condal filed its motion on June 10, 2010, which commenced the 30–day period of section 362(e). (A.172–74.) The debtors filed answering papers on June 23, and on June 28, Condal filed its reply. (A.234–243, 317–23.) Condal's reply brief made no mention of section 362(e). The Bankruptcy Court presided over a preliminary hearing on June 30, and supplemental

briefing followed. On July 7, Condal filed a brief explicitly directed to certain matters that the Bankruptcy Court raised at the June 30 hearing. (A.343–46.) Although the 30–day period of section 362(e) was set to expire in three days, Condal made no mention of the statute. (A.343–46.) The debtors filed a supplemental statement on July 14 "in accordance with authorization given to the parties by the Court at the hearing held on June 30, 2010." (A.357–60.) Finally, on July 16, Condal submitted a Supplemental Statement in Support of the Amended Motion, a five-page brief in further support of its motion. (A.375–79.) This was beyond the expiration of the 30–day period, and was Condal's fourth written submission in support of its motion. Only then did Condal fleetingly raise its section 362(e) argument. (A.378.) Similarly, Condal did not file the transcript of the underlying landlord-tenant proceeding, held on April 26, until July 20. (A.380.) The Bankruptcy Court then ruled orally on August 5, at which point it rejected Condal's contentions as to section 362(b) (10). By failing to raise the potential application of section 362(e) until its fourth submission on the motion, and past the expiration of the statute's 30–day period, Condal impliedly waived protection under the statute.

The Bankruptcy Court's order enforcing the automatic bankruptcy stay is affirmed.

### III. *The Bankruptcy Court's Order of August 31.2010 is Affirmed.*

### A. *The Bankruptcy Court's Order is Not Contrary to New York Law, and Is Explicitly Conditioned on the Parties' Compliance with State Tribunals.*

██ "Bankruptcy courts retain jurisdiction to enforce and interpret their own orders." *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 95 (2d Cir.2006) (quotation marks and citation omitted). On August 31, 2010, the Bankruptcy Court issued a carefully worded order that conditionally approved Xtra's assumption and assignment of its lease with Condal (the "August 31 Order"). Condal's appeal of that order invites this Court to usurp the Bankruptcy Court's powers to enforce its own order.

The August 31 Order approved, pursuant to 11 U.S.C. §§ 363 and 365, Xtra's sale of its physical assets to Bogopa Service Corp. ("Bogopa"), and conditionally approved Xtra's assumption of the Property's lease and the lease's assignment to Bogopa. (A.15–18.) The Bankruptcy Court issued the order after reviewing, among other things, opposition papers submitted by Condal, and hearing testimony from Bogopa's chief financial officer, Jae Kim. (A.16, A.70–138.) At its hearing regarding the lease's assumption and assignment, the Bankruptcy Court stated that state law would determine the ongoing landlord-tenant disputes between Xtra and Condal, and that the issue before the Bankruptcy Court was limited to whether the debtors could provide Condal "with adequate assurance that the lease will be honored for the remaining part of the term and that your client will not find itself back in landlord/tenant court." (A.57–59.)

At the conclusion of the hearing, the Bankruptcy Court ordered that, as a measure to assure future performance, Bogopa was to deliver additional security to Condal in the amount of $112,602. (A.17.) Xtra also agreed to perform certain repairs on the Property and deposit $250,000 in escrow to fund any other required repairs. (A.17.) The Bankruptcy Court directed the debtors to "make application to the New York State courts to obtain relief from that certain judgment of possession dated April 26, 2010, and the Debtors may assume and assign the Lease to [Bogopa] only subject to obtaining relief in the New York State courts. . . ." (A.18.)

Condal contends that pursuant to 11 U.S.C. § 365(d)(4) and the Bankruptcy Court's orders, the deadline has expired for the assumption or assignment of the Property's lease. Section 365 provides that a bankruptcy court may order the assumption or rejection of nonresidential leases. Section 365(d)(4) creates a limited window of time in which a nonresidential lease may be assumed or rejected:

(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—

(i) the date that is 120 days after the date of the order for relief; or

(ii) the date of the entry of an order confirming a plan.

(B)(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120–day period, for 90 days on the motion of the trustee or lessor for cause.

(ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

The text of section 365(d)(4), therefore, limits extensions once the initial 120–day period expires. Section 365(d)(4)(B)(i) permits the bankruptcy court, upon motion, to grant a 90–day extension "for cause." After that initial extension of time, any further extension may be granted "only upon prior written consent of the lessor in each instance." 11 U.S.C. § 365(d)(4)(B)(ii).

The parties agree that the statute's initial 120–day window to assume or assign the lease expired on August 27, 2010. In its order of August 24, 2010, the Bankruptcy Court, acting pursuant to section 365(d)(4)(B)(i), granted Xtra's motion to extend to August 31, 2010 the time by which Xtra must assume or reject its lease. (A.698.) The precise wording of the August 31 Order stated that this extension was granted in order to permit Xtra "to assume or reject its Lease . . . to and including August 31, 2010 without prejudice to (a) 2300 Xtra Wholesalers, Inc's right, upon further application, to seek a further extension of the time to assume or reject the Lease or (b) the rights of any party in interest, including Condal to object to such request on any ground." (A.698.)

The wording of the August 31 Order is critical to the application of section 365(d)(4) and Xtra's assumption of the lease. The order stated that it is "ORDERED, that notwithstanding any other provisions hereof, the Debtors shall make application to the New York State courts to obtain relief from that certain judgment of possession dated April 26, 2010, and the Debtors may assume and assign the Lease to Bogopa Randall LLC only subject to obtaining relief in the New York State courts . . . ." (A.18.) The Bankruptcy Court did not order that Xtra had assumed the lease as of August 31. Rather, it ordered Xtra to obtain relief in the New York State courts from the April 26 judgment of possession, after which Xtra "may assume and assign" the lease to Bogopa "only subject to obtaining relief in the New York State courts . . . ." (A.18.) Indeed, the order is captioned as an "Order Approving Sale of Debtors' Supermarket Assets Including *Conditional* Assumption and Assignment of Lease." (A.15; emphasis added.) The terms of the August 31 Order, therefore, were conditional, and required Xtra to ensure compliance with state law before it could assume the lease and assign it to Bogopa.

It is possible that Xtra misunderstood the order, as it argues that the Bankruptcy Court should be affirmed because Xtra assumed the lease "by operation of the August 31, 2010 Order that is subject of this appeal." (Opp. Mem. at 2.) Nevertheless, Xtra's conduct pursuant to the order is an issue properly within the Bankruptcy Court's supervision, *Millenium Seacarriers*, 458 F.3d at 95, and I have considered and need not address Condal's many factual contentions about Xtra's alleged failure to perform consistent with the August 31 Order. The August 31 Order is affirmed.

Condal also argues that the Bankruptcy Court erred in concluding that the lease was subject to assumption and assignment. According to Condal, Xtra's lease terminated on September 10, 2009, pursuant to a termination notice that Condal sent to Xtra in August 2009, and the Bankruptcy Court erred by treating the lease as capable of assumption or assignment.[3] (Condal Mem. at 13.) Whether, as Condal contends, the lease was terminated in September 2009, or whether it terminated by virtue of the New York Supreme Court's order of April 2010, the Bankruptcy Court made explicit that the lease's assumption is conditioned on "obtaining relief in the New York State courts...." (A.14.) The Bankruptcy Court's order recognized outstanding disputes between Xtra and Condal, and concluded that Xtra's assumption of the lease could go forward only if the state courts conclude that Xtra has possession of the lease. (A.14.) Condal's contention that the Bankruptcy Court ruled contrary to state law is without merit. Again, it is for the Bankruptcy Court to determine whether Xtra has complied with its orders.

**B.  *The Record Supported the Bankruptcy Court's Conclusion that Xtra Could Promptly Cure Past Defaults and Ensure Future Performance.***

■ Bankruptcy Code section 365(b)(1) provides that a debtor's lease may not be assumed unless the trustee can adequately assure that any default will be promptly cured, compensation is provided for past default, and adequate assurance is made of future performance. To the extent that such determinations turn on factual disputes and not issues of law, they are reviewed for clear error, *In re Penn Traffic*, 524 F.3d at 378; *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 439 (5th Cir. 2002) (reviewing section 365(b)(1) contentions under the clear error standard).

The Bankruptcy Court heard extensive testimony from Bogopa's CFO prior to issuing the August 31 order. (A.70–138.) It ordered Bogopa to provide $112,602 in additional security to Condal, and directed Xtra to deposit $250,000 in escrow to fund repairs to the Property. (A.13.) As has been repeatedly noted, the Bankruptcy Court also required Xtra to obtain relief from the judgment of possession dated April 26, 2010. (A.14.) Condal contends that Bogopa is a financially troubled entity that could not adequately assure that defaults under the lease would be cured, and that it would fully perform under the lease. However, Bogopa's CFO testified that Bogopa had $3 million available in cash on hand, had budgeted $500,000 for renovations to the Property, was willing to perform repairs with in-house construction personnel, and willing to obtain a certifi-

---

3.  Condal contends that by not commencing a *Yellowstone* proceeding prior to September 10, Xtra, in essence, forfeited its rights under the lease. But on September 11, 2009, Condal initiated the holdover proceeding that was ultimately vacated by the Civil Court due to Condal's "totally contradictory and unreliable" affidavits of service. (A.354–56.) In any event, the effectiveness of the lease is to be resolved by the New York courts, as the Bankruptcy Court held.

cate of occupancy at its own expense. (A.97, 101–02, 111, 115–16.)

The Bankruptcy Court's application of section 365(b)(1) is not the product of clear error, and is affirmed.

IV. *Condal's Motion to Stay Enforcement of the Bankruptcy Stay is Denied as Moot.*

Condal has moved for stay of enforcement of the automatic bankruptcy stay and of the Bankruptcy Court's order of August 31, pending resolution of its bankruptcy appeals. The motion is denied as moot.

CONCLUSION

The Bankruptcy Court's orders are AFFIRMED.

Condal's motion to stay enforcement of the Bankruptcy Court's orders is DENIED. (10 Civ. 7292, Docket # 12; 10 Civ. 7293, Docket # 12.)

SO ORDERED.