OPINION OF THE COURT
Richard F. Braun, J.
This is an action for injunctive and declaratory relief. Plaintiff tenant 51 Park Place LH, LLC moves for a Yellowstone injunction tolling and staying the cure period in a default notice, dated September 14, 2011, until a reasonable time after this court has determined whether such a default validly exists, and enjoining defendant landlord Consolidated Edison Company of New York, Inc. from declaring that plaintiff committed an “event of default” under the lease for the subject premises and from taking any steps to terminate the lease or plaintiff’s right to purchase the premises pursuant to an option under the lease. Plaintiff notes that “the Premises have been highly publicized of late due to Plaintiffs intention to build a peaceful Islamic community center on the site.” Plaintiff speculates as to whether defendant may be bowing to unspecified political pressure.
Pursuant to the lease between the parties, the tenant had a right to renew its lease for 21 years, with rent set for the renewal term pursuant to a formula based upon the value of the land only, as vacant and unimproved, to be determined through arbitration if the parties were unable to agree. Specifically, as to the renewal rent amount, section 1.04 of the lease provides:
“The Rental which Tenant agrees to pay during each renewal term shall be an amount per annum equal to V2 of 1% in excess of the prime rate . . . , of the fair market value ... of the Land only considered as vacant and unimproved as of the date six (6) months prior to the commencement of each such renewal term . . . .”
Plaintiff exercised its right to a renewal, and, because the parties could not agree, an arbitration was ultimately held to determine the fair market value of the property. The appraisers determined that the fair market value of the subject property for the purpose of determining the rent under the lease renewal was $10,350,000. There is no dispute that the prime rate for purposes of the calculation is 5%. Defendant contends that the renewal rent increase percentage under the lease is 5% + V2 of *592 1% or 5.5% and thus calculated that plaintiff now owes $1,700,875 in arrears, for which the subject default notice was sent. While plaintiff maintains that it will seek to set aside the appraisal in a proceeding pursuant to article 75 of the CPLR, for purposes of this action plaintiff asserts that, even accepting the appraisal as valid, defendant’s method of calculating arrears based upon the appraisal is incorrectly based on an erroneous determination of the percentage under the lease. Plaintiff argues that the increase is one V2 times 1% + 5% or 3%, making the arrears only $881,519; and thus the amount specified in the notice is wrong.
In addition, plaintiff argues that the default notice was deficient in that the subject notice provided for a 20-day cure period and that, if plaintiff did not cure within that period, then defendant may exercise all of the available remedies under the lease, including termination thereof, but argues that the lease requires that a second cure notice allowing 10 more days after the 20-day notice, before a termination notice can be served. The wording of the subject notice served does not mean that defendant would not fulfill its responsibility under the lease to serve the required second notice to cure before serving a termination notice.
Nevertheless, plaintiff contends that, if its contentions are incorrect, it is ready, willing, and able to cure. Defendant disputes plaintiffs ability to cure, noting various financial difficulties of plaintiffs limited liability company member, Sharif El-Gamal, and emphasizes his suggestion that, if plaintiff has to pay the arrears in the amount that defendant contends is due, plaintiff should be allowed to pay in installments. Plaintiff counters in its reply with how it would pay the full amount if necessary.
As the Court of Appeals reiterated in Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc. (93 NY2d 508, 514 [1999]):
“The party requesting a Yellowstone injunction must demonstrate that:
“(1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means *593 short of vacating the premises” (internal quotation marks omitted).
There is no dispute as to the first three factors.[1] While defendant disputes plaintiffs calculation of the arrears, it is the very purpose of a Yellowstone injunction to afford the tenant an opportunity to contest the alleged violation in the notice to cure while preserving the tenant’s right to cure in the event that the tenant is wrong and a violation is found to exist (see Post v 120 E. End Ave. Corp., 62 NY2d 19, 25 [1984]; Stuart v D & D Assoc., 160 AD2d 547, 548 [1st Dept 1990]; Garland v Titan W. Assoc., 147 AD2d 304, 307 [1st Dept 1989]). Indeed, in order to obtain a Yellowstone injunction, plaintiff need not establish a probability of success on the merits or the other elements normally required for a preliminary injunction (see Jemaltown of 125th St. v Leon Betesh/Park Seen Realty Assoc., 115 AD2d 381, 382 [1st Dept 1985]).[2]
While defendant disputes plaintiffs ability to cure the alleged violation, plaintiff need not prove its ability to cure in order to obtain a Yellowstone injunction (id.; Herzfeld & Stern v Ironwood Realty Corp., 102 AD2d 737, 738 [1st Dept 1984]; see ERS Enters. v Empire Holdings, 286 AD2d 206, 207 [1st Dept 2001]). While plaintiff effectively acknowledges that it does not have the cash on hand necessary to pay the full amount at once, it nevertheless contends that it is ready, willing and able to cure. In reply, plaintiffs member Sharif El-Gamal notes that one method is that he could get a mortgage on the property next door, which plaintiff owns and is mortgage free, in order to cover the arrears.
Accordingly, by separate decision and order of this date, the motion was granted. The Yellowstone injunction is conditioned on the payment of use and occupancy of $25,875 per month during the pendency of the action, the undisputed amount of *594 monthly rent, and, as sought by defendant, the posting of an undertaking but, in a lesser amount of $781,519, which is the undisputed amount of the claimed arrears minus $100,000[3] (see Lexington Ave. & 42nd St. Corp. v 380 Lexchamp Operating, 205 AD2d 421 [1st Dept 1994]; Peron Rest. v Young & Rubicam, 179 AD2d 469, 470 [1st Dept 1992]).

. While the parties differ on the propriety of the notice, whether the notice is understood as a defective notice to cure or a threat of termination, it would satisfy the second element for a Yellowstone injunction (cf. Empire State Bldg. Assoc. v Trump Empire State Partners, 245 AD2d 225, 228 [1st Dept 1997] [where the Court held that Yellowstone relief was still available although the failure of the notice to set forth the cure period may have made the notice defective]).

. It is not for this court to now interpret the meaning of the ambiguity in the formula in the lease, “Va of 1% in excess of the prime rate,” and thus whether plaintiff is correct that the calculation should be understood as prime plus 1% divided by two, rather than a half a percentage point above the prime rate, as defendant contends.

. The court has subtracted $100,000 from the undisputed amount of arrears because plaintiff has already filed an undertaking of $100,000 as a condition of the temporary restraining order in the order to show cause signed by the court (CPLR 6313 [c]).