[943 NYS2d 11]

VILLAGE CENTER FOR CARE, Appellant, v SLIGO REALTY AND SERVICE CORP., Respondent.

First Department, April 5, 2012

### APPEARANCES OF COUNSEL

*Cutler Minikes & Adelman LLP*, New York City (*Jonathan Z. Minikes* of counsel), for appellant.

*Novick, Edelstein, Lubell, Reisman, Wasserman & Leventhal, P.C.*, Yonkers (*Gregory S. Bougopoulos* of counsel), for respondent.

### OPINION OF THE COURT

ACOSTA, J.

In this appeal we reaffirm this Department's rule that where defaults are incapable of being cured within the time provided in the notice to cure, and all that the terms of the lease require from the tenant is commencement of diligent efforts to cure the defaults within the allotted time, service of a notice of termination does not necessarily bar subsequent *Yellowstone* injunctive relief.

In November 2000, plaintiff tenant Village Center for Care leased the second floor at 534 Hudson Street, New York, New York from defendant landlord Sligo Realty and Service Corp., as an office for its not-for-profit corporation, which provides community case management to disabled, geriatric and low income individuals. The lease term was for 15 years, six months and 15 days, and tenant agreed to perform certain electrical, plumbing and HVAC work at the premises. This work was completed in or about 2001.

On March 28, 2011 landlord served tenant with a "10-day" notice to cure alleging that tenant violated the lease inasmuch as tenant failed to (a) obtain and/or furnish landlord with proof that the Landmarks Preservation Commission had signed off on the work performed by tenant at the premises, (b) provide a mechanical ventilation certificate, (c) furnish proof of the *structural* stability of the work that was performed, and (d) provide proof of the sprinkler hydrostatic test. The notice set forth a "cure date" of April 15, 2011.

In pertinent part, paragraph 17 of the lease provides that:

> "[i]f the Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the

payment of rent or additional rent . . . upon Owner serving a written ten (10) days' notice upon Tenant specifying the nature of said default and upon the expiration of said ten (10) days, if Tenant shall have failed to comply with or remedy said default, *or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said ten (10) day period and if Tenant shall not have diligently commenced curing such default within such ten (10) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default, then Owner may serve a written five (5) days' notice of cancellation of this lease upon Tenant"* (emphasis added).

In response to the notice to cure, tenant annexed a Landmarks Preservation Commission permit, a technical report regarding the mechanical ventilation certificate, and an OP-38 self certification of plumbing inspection conducted by the sprinkler contractor, the approved sprinkler system hydraulic analysis, and the work plans stamped approved by the City of New York Department of Buildings.

Tenant received no response to its correspondence, but on May 4, 2011 it was served with a notice of termination, which stated that the lease would be terminated as of May 16, 2011. Thereafter, the landlord agreed to an extension of the termination date to June 16, 2011. During this extension period, all defects were cured except the City's waiver of a further sprinkler hydrostatic test for the second floor premises. In order to obtain the waiver, tenant was obligated to provide the City with a copy of the building-wide hydrostatic test, and requested such from the landlord. Landlord, however, provided the tests of another tenant's demised space, but did not respond to tenant's further request for the building-wide test.

Thereafter, tenant sought a *Yellowstone* injunction arguing, among other things, that it had made immediate and diligent efforts to cure its default. Supreme Court denied *Yellowstone* relief because the application was untimely. According to the court, this Court's holding in *Becker Parkin Dental Supply Co. v 450 Westside Partners* (284 AD2d 112 [2001]), is no longer good law. In *Becker Parkin,* we held that *Yellowstone* relief is appropriate even where defaults in a notice to cure are not capable of being cured within the time provided in the notice as

long as all the lease requires is that the tenant commence diligent efforts to cure the defaults within the allotted time (*id.*). We disagree that *Becker Parkin* is no longer good law, and now reverse.

*Yellowstone* relief is available to protect against leasehold forfeiture, provided that the tenant has the ability to cure by means short of vacatur in the event the tenant is found to be in default of its obligations under a lease (*Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 25 [1984]). This rationale is in line with this State's public policy against the forfeiture of leases (*see Sharp v Norwood*, 223 AD2d 6, 11 [1996], *affd* 89 NY2d 1068 [1997]). This disinclination against leasehold forfeitures serves to promote the economy and business in our City. In addition, it promotes beneficial services in circumstances such as those presented here, where tenant is a not-for-profit organization dedicated to providing community case management to disabled, geriatric and low income individuals. This public policy concern takes on greater weight when a tenant diligently and in good faith attempts to cure the defect, but through no inaction of its own, can not do so (*see Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 695 [1995] [equity may intervene to "relieve( ) against . . . forfeitures of valuable lease terms when default in notice has not prejudiced the landlord"], quoting *Jones v Gianferante*, 305 NY 135, 138 [1953]; *J. N. A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392, 397 [1977]; *Weissman v Adler*, 187 AD2d 647, 648 [1992]). The Court of Appeals has acknowledged that courts routinely grant *Yellowstone* relief to reflect this State's policy against forfeiture, and courts have done so by accepting "far less than the normal showing required for preliminary injunctive relief" (*Post*, 62 NY2d at 25).

We previously held that where a notice of termination is premature under the terms of a lease, the notice is invalid, and thus the service of the notice will not bar a tenant from obtaining *Yellowstone* relief (*Empire State Bldg. Assoc. v Trump Empire State Partners*, 245 AD2d 225, 229 [1997]). That is, a default provision in a lease may provide, in addition to the specific number of days constituting a "cure period," for an unspecified longer period to cure. In such instances, we have held that where a tenant with good faith and diligence commences curing within the specified period of time, but cannot complete the cure within that period, the unspecified longer period provided for in the lease governs the applicable "cure period" (*see VB Mgt. v AD 1619 Co.*, 256 AD2d 84 [1998], *lv denied* 93 NY2d 810 [1999]).

In this case, the lease in question defined the cure period as 10 days, but also contains an unspecified longer period of cure "if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said ten (10) day period." It cannot be reasonably argued that tenant could have cured all the alleged defaults within 10 days, since the tenant needed to, among other things, schedule and complete a hydrostatic sprinkler test with the City of New York. While it is possible that tenant could have obtained a waiver within 10 days, that application required it to obtain the results of the building-wide hydrostatic test, which the landlord admits it failed to produce. Tenant commenced curing the violation within the 10 days by providing landlord with the documentation tenant believed would remedy its default, and it was error for Supreme Court to deny *Yellowstone* relief since "all that the lease terms require from the tenant is commencement of diligent efforts to cure the defaults within the allotted time" (*Becker Parkin*, 284 AD2d at 112).

Contrary to defendant's assertion, and Supreme Court's view, *Becker Parkin* is still good law in this Department. We note that *Becker Parkin* cited, with approval, to *Long Is. Gynecological Servs. v 1103 Stewart Ave. Assoc. Ltd. Partnership* (224 AD2d 591 [1996]), a Second Department case, where the lease provided for an unspecified longer cure term for defaults that could not be cured within the set period. The tenants in both *Becker Parkin* and *Long Is. Gynecological* commenced diligent efforts to cure the default, but could not complete the cure within the lease's specified 30 days. In both cases, *Yellowstone* relief was found to be timely.

The Second Department subsequently rejected *Long Is. Gynecological* in *Korova Milk Bar of White Plains, Inc. v PRE Props., LLC* (70 AD3d 646 [2010]), and held that a tenant, such as tenant here, who did not file for *Yellowstone* relief within the cure period is forever barred from such relief, no matter what the provisions of the lease concerning defaults incapable of cure within the stated time and regardless of what efforts they had undertaken to effectuate the cure (*Korova Milk Bar*, 70 AD3d at 647-648).

The Second Department reiterated its abrogation of *Long Is. Gynecological* in *Goldcrest Realty Co. v 61 Bronx Riv. Rd. Owners, Inc.* (83 AD3d 129, 133 [2011]), and mistakenly asserted that this Department had also "rejected the argument that a *Yellowstone* motion brought after the expiration of the appli-

cable cure period may be deemed timely as long as it is made before the lease in question is actually terminated" citing *KB Gallery, LLC v 875 W. 181 Owners Corp.* (76 AD3d 909 [2010]). This is incorrect. *KB Gallery* does not reject *Long Is. Gynecological* and *Becker*, and in fact does not mention those decisions at all.

Although we cited the Second Department's *Korova* decision, there is nothing in *KB Gallery* which indicates that we intended to overrule *Becker Parkin*. The issue of whether the notice of termination was valid under the lease's cure provision was not before this Court in *KB Gallery*. Rather, the issue was whether *Yellowstone* relief could be granted after service of a valid notice of termination, but before the lease has been "actually" terminated (*KB Gallery*, 76 AD3d at 909). In this regard, the tenant in *KB Gallery* argued that it was actually not in default, not that its time to cure under the lease had not yet expired. In *Becker Parkin*, however, defaults in the notice were not capable of being cured within the time provided in the notice and we held, "Under these circumstances, all that the lease terms require from the tenant is commencement of diligent efforts to cure the defaults within the allotted time" (284 AD2d at 112).

Here, the plain language of the lease similarly provides for a scenario where tenant may not be able to cure a defect within the 10 day period; landlord should be bound by the terms of the agreement (*see Empire State Bldg.*, 245 AD2d at 228 ["the existence of a period in which a violation may be cured *does not depend on the contents of the notice of default, but upon the terms of the lease*" (emphasis added)]).

Accordingly, the orders of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered June 20, 2011 and June 21, 2011, which denied plaintiff tenant's motion for a *Yellowstone* injunction, and dismissed the action, respectively, should be reversed, on the law, without costs, the motion granted and the action reinstated. The decision and order of this Court entered herein on January 10, 2012 (91 AD3d 464 [2012]) is hereby recalled and vacated.

FRIEDMAN, J.P., SWEENY, ACOSTA, RENWICK and ABDUS-SALAAM, JJ., concur.

Orders, Supreme Court, New York County, entered June 20, 2011 and June 21, 2011, reversed, on the law, without costs, the motion granted and the action reinstated.

The decision and order of this Court entered herein on January 10, 2012 (91 AD3d 464 [2012]) is hereby recalled and vacated.