[910 NYS2d 97]

LI Equity Network, LLC, Respondent, v Village in the Woods Owners Corp., Appellant, et al., Defendant.

Second Department, October 19, 2010

### APPEARANCES OF COUNSEL

*Havkins Rosenfeld Ritzert & Varriale, LLP*, New York City (*Jarett L. Warner* of counsel), for appellant.

*Windels Marx Lane & Mittendorf, LLP*, New York City (*Michael H. Resnikoff* of counsel), for respondent.

### OPINION OF THE COURT

BELEN, J.

When the plaintiff, LI Equity Network, LLC, a limited liability company, purchased shares allocated to one of the cooperative units of the defendant Village in the Woods Owners Corp. (hereinafter the defendant) at a nonjudicial foreclosure sale, the plaintiff's representative agreed to an independent auctioneer's "Terms of Sale." These "Terms of Sale" allegedly bound prospective purchasers to the provisions in the defendant cooperative corporation's governing documents, including the

proprietary lease and house rules. The cooperative corporation's governing documents required, among other things, that the defendant's board of directors approve prospective purchasers before they obtain possession of a unit and the shares allocated to it. After the plaintiff bought the shares allocated to the subject unit at the nonjudicial foreclosure sale, the defendant's board of directors notified the plaintiff that it would reject the plaintiff's application. The plaintiff commenced this action, inter alia, for specific performance of the closing of title on the ground that it is statutorily entitled to own the unit, regardless of the prohibitive language in the defendant's governing documents. The foreclosing lender, the defendant Washington Mutual Bank (hereinafter the lender), had not appeared in this action.

The principal issue presented on this appeal is whether the successful bidder on foreclosed shares allocated to a cooperative unit at a nonjudicial auction, which is governed by article 9 of the Uniform Commercial Code (hereinafter UCC), who agreed to be bound by "Terms of Sale" providing that the sale was subject to, inter alia, a cooperative corporation's governing documents, must seek the approval of a cooperative corporation's board of directors and otherwise comply with a cooperative corporation's governing documents prior to obtaining the shares and proprietary lease referable to the unit. We answer this question in the affirmative.

In 1998, Alfred Gerard and Greg Walters obtained a loan from the lender secured by a mortgage on the shares allocated to, and the proprietary lease referable to, their cooperative apartment, unit A2, located on 2 Eucalyptus Court in Selden, New York (hereafter the unit). The cooperative corporation is known as Village in the Woods Owners Corp. In January 2007, the defendant evicted Gerard and Walters for failing to pay their maintenance fees. After their eviction, both tenants defaulted on their mortgage. The lender declared the loan in default and scheduled a public auction of the shares and proprietary lease referable to the unit.

The parties agree that the auction constituted a nonjudicial sale under article 9 of the UCC. The auctioneer conducted the sale pursuant to the provisions in the "Terms of Sale." Prospective bidders assented to these terms by executing a "Memorandum of Sale." One of these bidders, the plaintiff, a limited liability company, successfully bid on the unit and sought to close title on it.

Citing various provisions in its governing documents, i.e., the offering plan, proprietary lease, bylaws, house rules, and application procedures, the defendant advised the plaintiff that the defendant's board of directors (hereinafter the Board) would not approve any transfer of shares to the plaintiff. Although the plaintiff never filed a formal application with the Board to obtain the shares, the Board independently reviewed and rejected the plaintiff's proposal to close on the unit and then sell it to a Board-approved purchaser.

In May 2007, the plaintiff commenced this action against the defendant and the lender, inter alia, for "specific performance requiring that a closing be scheduled and that the plaintiff be given permission to close title." The plaintiff also sought damages against the defendant for breach of the implied duty of fair dealing and against the lender for breach of contract. The plaintiff then moved by order to show cause, in effect, for summary judgment on the first cause of action to compel specific performance of the closing of title. The defendant opposed the motion and cross-moved to enjoin the plaintiff from entering the unit pending resolution of the action.

In an order entered December 11, 2008, the Supreme Court granted the plaintiff's motion, denied the defendant's cross motion, and directed the transfer of title to the plaintiff (2008 NY Slip Op 33613[U]). The Supreme Court reasoned that the defendant did not have the power to interfere with the transfer of its proprietary shares resulting from a "judicial sale." The defendant appeals. We reverse.

We find that the plaintiff is subject to the approval requirements found in the defendant's governing documents. Once subject to these documents, the "Terms of Sale" do not exempt the plaintiff from the approval requirements. We also find that the defendant properly exercised reasonable business judgment when it applied the approval requirements to the plaintiff's proposal to close on the shares allocated to the unit.

On appeal, the defendant contends that the plaintiff's purchase of the shares allocated to the unit is subject to the pertinent terms in its governing documents. These terms require the Board to approve prospective purchasers and prohibit corporate and other business ownership of the shares allocated to the defendant's units. The plaintiff argues that cooperative approval requirements cannot prevent the transfer of shares allocated to the foreclosed unit by "operation of law," in this case, pursuant to UCC article 9. The plaintiff relies on

cases holding that cooperatives may not interfere with a judgment creditor's levy of execution on the shares allocated to the unit of a defaulting cooperative tenant or with a decedent tenant's right to bequeath the shares allocated to his cooperative unit.

"Cooperative apartments are personal property, not real property" (*Matter of Pollack*, 18 AD3d 555, 557 [2005]). Accordingly, "[a] contract for the sale of a cooperative apartment, in reality a sale of securities in a cooperative corporation, is governed by the Uniform Commercial Code" (*Friedman v Sommer*, 63 NY2d 788, 789 [1984]). As here, where a cooperative tenant defaults "on a security agreement which underlies a loan related to the purchase of shares in a cooperative, the remedies found in UCC article 9 are available to the lender" (*Fridman v Dime Sav. Bank of N.Y.*, 204 AD2d 387, 388 [1994]).

To that end, UCC 9-610 governs nonjudicial foreclosure sales in New York State. UCC 9-610 (a) states that when a debtor defaults on a security agreement, the secured party "may sell, lease, license, or otherwise dispose of any or all of the collateral." UCC 9-610 (b) mandates that

> "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, *by one or more contracts,* as a unit or in parcels, and at any time and place and *on any terms*" (emphasis added).

In this case, paragraph 6 of the "Terms of Sale" clearly states: "[t]he apartment is sold . . . subject to the . . . by-laws; rules, regulations, procedures, resolutions, Offering Plan, charges, fees and any amendments thereto of [the defendant]." At the direction of the lender's counsel, the auctioneer sold the shares allocated to the unit to the plaintiff in accordance with these provisions. The auctioneer provided the plaintiff's representative with the "Terms of Sale" prior to the auction and the plaintiff's representative signed a "Memorandum of Sale," which was attached to the "Terms of Sale." The plaintiff thereby agreed "to comply with the terms and conditions of the sale of the said apartment, as mentioned and set forth [in the Terms of Sale]."

The plaintiff incorrectly posits that the terms in the defendant's governing documents may not interfere with its ability to close title to the shares allocated to the unit because such terms

contravene the rights that UCC 9-610 (b) confers upon the plaintiff. In fact, no conflict exists between the plaintiff's statutorily derived rights under UCC 9-610 (b) and the terms in the defendant's governing documents. On the contrary, UCC 9-610 (b) specifically contemplates that "a secured party may dispose of collateral . . . by one or more contracts . . . and on any terms." Thus, the "Terms of Sale" to which the plaintiff's representative assented at the UCC 9-610 nonjudicial sale are in addition to, and not in conflict with, any statutory rights derived from UCC 9-610.

Even if we agreed with the plaintiff that UCC 9-610 does not incorporate the "Terms of Sale," "[t]he imposition of restrictions on transfer to transfers occurring by operation of law is subject to the parties' agreement" (Di Lorenzo, New York Condominium and Cooperative Law § 10:3, at 505 [2d ed]). Thus, transfers occurring by operation of law "can be modified by the proprietary lease, the by-laws or other governing documents" (*id.*). This Court has consistently reaffirmed the above principle. We have held numerous times that cooperative governing documents may permissibly modify the rights prospective cooperative tenants obtain by "operation of law."

In *Hochman v 35 Park W. Corp.* (293 AD2d 650 [2002]), the cooperative tenant pledged the shares of his unit as collateral for a business loan from a creditor. When the tenant defaulted, the creditor took possession of the collateral. The cooperative issued new stock certificates and a new proprietary lease to the creditor in conformance with its governing documents. At a later date, the creditor agreed to reconvey the shares and proprietary lease back to the former tenant if he paid the entire outstanding balance on his defaulted loan.

The creditor conditioned this reconveyance "upon the consent of the defendant cooperative corporation," which the cooperative refused to give (*id.*). The former tenant sued the cooperative, arguing that he had a statutory right, under UCC article 9, to redeem his cooperative shares from the creditor. We disagreed, and held that the cooperative's proprietary lease, not the statute, governed the terms of the reconveyance.

> "Although the [former tenant] correctly asserts that he had a statutory right to redeem his cooperative shares from [the lender] until [it] disposed of the shares, it is undisputed that when [the lender] took possession of the [former tenant's] collateral, new

stock certificates and a new proprietary lease were issued to its nominee. Accordingly, the [former tenant's] request to have the shares and lease conveyed back to him came within the scope of the provision of the proprietary lease which prohibits assignment of the lease without the written consent of the cooperative board. Thus, the decision whether to permit the requested assignment was within the board's authority" (*id.* at 651 [citation omitted]; *see Consolidated Resources, LLC v 210-220-230 Owner's Corp.*, 59 AD3d 579 [2009] [holding that default provisions in proprietary lease, requiring cooperative board's consent to transfer pledged shares, govern where the tenant pledged her proprietary lease and shares to the creditor as security for a loan and then defaulted]; *Bank of N.Y. v Carr*, 161 Misc 2d 332, 334 [1994] [ruling that creditor's security interest under UCC article 9 is subject to option rights of cooperative corporation, as stated in its bylaws]).

We have also applied these same rules in the context of trusts and estates (*see Matter of Pollack*, 18 AD3d at 557 [stating that "a trust is bound by the terms of a proprietary lease restricting life estates"]; *Cavanagh v 133-22nd St. Jackson Hgts.*, 245 AD2d 481 [1997] [binding the executrix of decedent tenant's estate to assignment restrictions in the subject proprietary lease]; *Joint Queensview Hous. Enter. v Balogh*, 174 AD2d 605 [1991] [subjecting decedent tenant's will bequest to repurchase option provided in cooperative's bylaws]).

Here, the Supreme Court erroneously stated that the lender initiated a "judicial sale" and referenced a "Court ordered judgment of foreclosure" (2008 NY Slip Op 33613[U], *2). A judgment of foreclosure, however, is not included in the record, and neither party references such a judgment. In fact, the lender's counsel engaged an independent auctioneer to conduct the private auction, which explains why the record is devoid of any mention of a court-appointed referee. The auctioneer attested in her "Affirmation and Certificate of Sale" that the "[l]ender . . . placed [the collateral] in my hands for the execution and foreclosure under the Uniform Commercial Code." Moreover, in its brief, the plaintiff acknowledges that the lender "chose not to use a judicial sale, but proceeded to sell the property directly at auction" in accordance with "non-judicial Article 9 sale" procedures. Consequently, the Supreme Court's conclusion that the defendant's "attempt to impose . . . its bylaw provisions to

change the terms of the foreclosure sale is without legal merit" (*id.*) runs contrary to the law and the facts.

The defendant further argues that its governing documents, in conjunction with the "Terms of Sale," prohibit the transfer of shares to corporate entities. The defendant relies on several relevant sections in its governing documents to support its position. The defendant's bylaws state that "[p]roprietary leases shall be assigned or transferred only in compliance with, and shall never be assigned or transferred in violation of, the terms, conditions or provisions of such proprietary leases." Further, "[n]o person to whom the interest of a lessee or shareholder shall pass by law, shall be entitled to assign any lease, transfer any shares, or to sublet or occupy any apartment, other than upon compliance with the requirements of the lease and these By-laws."

Paragraph 15 of the proprietary lease, governing "Assignment," provides that a cooperative tenant may not assign the lease or transfer the shares allocated to the lease until "consent to such assignment shall have been authorized by . . . [the defendant's Board of] Directors," except as provided in paragraphs 16 ("Pledge of Shares and Lease"), 37 ("Unsold Shares"), or 38 ("Rights of a Secured Party" of the lease). Thus, in order to obviate the need for the Board's approval, an exception under paragraph 15 must apply. Paragraph 38, entitled "Rights of a Secured Party," is the only exception that potentially applies to the instant case. It states:

> "(c) If the purchase by the Lessee of the shares allocated to the apartment was financed by a loan made by a bank . . . and a default . . . shall have occurred under the terms of the . . . mortgage . . . and if . . .

> "(2) *an individual* designated by the Secured Party, or the individual nominee of the individual so designated by the Secured Party, shall be entitled to become the owner of the shares and the lessee under this lease pursuant to the terms of said security agreement-leasehold mortgage [then] . . .

> "(5) (a) a transfer of the shares and the proprietary lease shall be made to such *individual,* upon request and *without the consent of [the defendant's] directors* or the shareholders to which reference is made in Paragraph 15 (a) . . . and

"(b) the *individual* to whom such transfer is made (if and as long as such *individual,* by *himself* or a *member of his family,* does not actually occupy the apartment) shall have all of the rights provided for in paragraphs 14 ["Subletting"], 15 ["Assignment"], 20 ["Alterations"] and 37 ["Unsold Shares"] of this lease as if he were a holder of Unsold Shares" (emphasis added).

The defendant asserts that paragraph 38 (c) contemplates that the lender's designee will be an "individual," i.e., a natural person. We agree. Therefore, it does *not* exempt corporate and other business entities from the defendant's usual approval procedures.

More to the point, the defendant's application procedures contain the following bold, underlined language: "**OCCUPANCY OF THE SUBJECT UNIT MUST BE FOR A PERIOD OF ONE (1) YEAR, THEREAFTER SUBLETTING WILL BE ALLOWED**." The application also required the purchaser to sign the following statement: "I understand apartments can only be purchased and/or owned by *natural persons, not by corporations,* partnerships or *other entities*" (emphasis added).

On the other hand, the plaintiff maintains that paragraph 8 (d) of the "Terms of Sale" expressly exempts corporate and business purchasers, such as itself, from obtaining the Board's approval and the defendant's policy against corporate and business ownership of its units.

As mentioned above, paragraph 6 of the "Terms of Sale" provides: "The apartment is sold . . . subject to the . . . bylaws; rules, regulations, procedures, resolutions, Offering Plan, charges, fees and any amendments thereto of [the defendant]." Paragraph 8, however, states:

"8. (a) *The purchase of the collateral may be subject to the approval of the cooperative corporation, as provided in the Proprietary Lease or other co-op bylaws, rules or regulations* . . . Additionally, the successful bidder must cooperate with any and all requirements of . . . the board of directors of the cooperative corporation, which requirements may include, but are not limited to *personal* or *professional references, financial statements, personal interviews,* and the like.

"(b) If such approval is not obtained by the success-

ful bidder on or before the closing date or within any extension period thereof approved by the Secured Party, then, the Secured Party may, at its sole option, accept the next highest bid, re-notice the sale, or hold the purchaser in default . . .

"(d) *The benefits and terms of paragraph 8 (a) and (b) shall not have any application to a corporate bidder*" (emphasis added).

The plaintiff contends that an inherent tension exists between paragraphs 6 and 8 (d) and the approval requirements contained in the defendant's governing documents. It urges us to resolve the disputed language in its favor.

When a prospective cooperative tenant seeks to obtain the shares allocated to a unit from the cooperative corporation, courts apply "the usual rules of contract interpretation to the controlling documents, including the proprietary lease" (*Consolidated Resources, LLC v 210-220-230 Owner's Corp.*, 59 AD3d at 581; *see Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54, 59 [2005]). It is an elementary principle of contract law that "generally only parties in privity of contract may enforce terms of the contract" (*Freeford Ltd. v Pendleton*, 53 AD3d 32, 38 [2008]). Where the parties are in privity with one another, the contract between them " 'should not be interpreted so as to render any clause meaningless' " (*Warner v Kaplan*, 71 AD3d 1, 5 [2009], quoting *RM 14 FK Corp. v Bank One Trust Co., N.A.*, 37 AD3d 272, 274 [2007]). Instead, " '[a]n interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation' " (*Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium*, 65 AD3d 985, 986-987 [2009], quoting *Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 196 [1995]). Thus, " 'where two seemingly conflicting contract provisions reasonably can be reconciled, a court is *required* to do so and to give both effect' " (*Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium*, 65 AD3d at 987, quoting *Proyecfin de Venezuela, S.A. v Banco Indus. de Venezuela, S.A.*, 760 F2d 390, 395-396 [emphasis added]).

The plaintiff's assertion that paragraph 8 (d) of the "Terms of Sale" exempts it from the Board's approval is not supported by the facts of this case because the defendant was not a party to this agreement. The "Terms of Sale" constituted an agreement solely between the plaintiff and the lender establishing "the terms and conditions of sale." Paragraph 2 of the "Terms

of Sale" states, "The purchaser of said apartment will at the time and place of sale sign a memorandum of his purchase and an agreement to comply with the terms and conditions of sale herein contained." In fact, only the lender's agent, the auctioneer, and the plaintiff's representative executed the above-referenced "memorandum," officially entitled the "Memorandum of Sale." The record contains no evidence that the defendant agreed to the "Terms of Sale," was in privity with either of the parties, or, more specifically, exempted the plaintiff from its approval requirements. Accordingly, the plaintiff cannot enforce the provisions of the "Terms of Sale" against the defendant (*see Freeford Ltd. v Pendleton*, 53 AD3d at 38).

In light of our determination, we need not address the defendant's remaining contentions.

Accordingly, the order is reversed, on the law, that branch of the plaintiff's motion which was, in effect, for summary judgment on the first cause of action to compel specific performance on the closing of title is denied, and the defendant's cross motion to enjoin the plaintiff from entering the cooperative apartment known as unit A2, located on 2 Eucalyptus Court in Selden, New York, pending resolution of this action, is granted.

FISHER, J.P., LEVENTHAL and SGROI, JJ., concur.

Ordered that the order is reversed, on the law, with costs, that branch of the plaintiff's motion which was, in effect, for summary judgment on the first cause of action to compel specific performance on the closing of title is denied, and the defendant's cross motion to enjoin the plaintiff from entering the cooperative apartment known as unit A2, located on 2 Eucalyptus Court in Selden, New York, pending resolution of this action, is granted.