■ LEONARD LOMBARD, Respondent, v STATION SQUARE INN APARTMENTS CORP., Appellant, et al., Defendant. [942 NYS2d 116]—

In an action, inter alia, for injunctive relief, the defendant Station Square Inn Apartments Corp. appeals from so much of an order of the Supreme Court, Queens County (James J. Golia, J.), dated December 23, 2010, as granted that branch of the plaintiff's motion which was to preliminarily enjoin it from foreclosing on, selling, transferring, or assigning the plaintiff's shares of stock in a certain residential cooperative housing corporation and proprietary leases for the subject apartments during the pendency of the action.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the plaintiff's motion which was to preliminarily enjoin the defendant Station Square Inn Apartments Corp. from foreclosing on, selling, transferring, or assigning the plaintiff's shares of stock in the residential cooperative housing corporation and proprietary leases for the subject apartments during the pendency of the action is denied.

The plaintiff was the proprietary lessee of 11 cooperative apartments in Queens. He owned shares of stock in the defendant Station Square Inn Apartments Corp. (hereinafter the defendant), the residential cooperative housing corporation that owns the buildings where the subject apartments (hereinafter the co-op units) are located. The stock certificates, bylaws, and offering plan give the defendant a first lien on all shares of stock for all sums due and owing under the proprietary leases. The plaintiff does not reside in any of the subject units and sublets them to others. The plaintiff concedes that he defaulted in the payment of maintenance. As a result of his default, the defendant corporation issued a notice of default dated November 20, 2009. This notice asserted that the plaintiff was in arrears

on maintenance and other fees, as well as sublet charges. The plaintiff claims that he obtained all of his shares in the corporation from holders of unsold shares and, therefore, he is not required to pay sublet charges. The notice gave the plaintiff 10 days to cure the default. During the cure period, the plaintiff did not cure the default or move for injunctive relief to stay the cure period.

By notice of termination dated December 8, 2009, the defendant terminated the proprietary leases for the co-op units effective December 21, 2009, based upon the plaintiff's failure to cure his default. The plaintiff attempted to cure the default on February 16, 2010, by paying an amount which he did not dispute was due and owing, but this attempt was rejected. On March 26, 2010, the defendant gave the plaintiff a notice of foreclosure sale of cooperative apartments, alleging that, due to the plaintiff's default in failing to tender the alleged arrears, the leases were terminated on December 21, 2009, and the stock issued appurtenant to the co-op units was cancelled. This notice advised the plaintiff that the defendant would sell the stock and all of the plaintiff's right, title, and interest in the proprietary leases and co-op units at a public auction to be held on April 15, 2010.

The plaintiff commenced this action, inter alia, for injunctive relief on April 8, 2010, and moved by order to show cause, among other things, to preliminarily enjoin the defendant from foreclosing on, selling, transferring, or assigning his shares of stock and proprietary leases in the co-op units during the pendency of the action. The Supreme Court granted the preliminary injunctive relief sought by the plaintiff, and the defendant appeals.

The defendant correctly contends that the Supreme Court erred in granting the preliminary injunctive relief sought by the plaintiff. The plaintiff failed to demonstrate a likelihood or probability of success on the merits, danger of irreparable injury in the absence of an injunction, and a balance of the equities in his favor (*see* CPLR 6301; *Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839 [2005]; *306 Rutledge, LLC v City of New York*, 90 AD3d 1026 [2011]; *Arcamone-Makinano v Britton Prop., Inc.*, 83 AD3d 623 [2011]).

Shares of stock issued in connection with cooperative apartments are personal property, not real property (*see LI Equity Network, LLC v Village in the Woods Owners Corp.*, 79 AD3d 26 [2010]; *Matter of Pollack*, 18 AD3d 555 [2005]). Accordingly, a contract for sale of shares referable to a residential cooperative housing apartment is in reality a sale of securities in a coopera-

tive corporation, and is governed by the Uniform Commercial Code (hereinafter the UCC) (*see Weiss v Karch*, 62 NY2d 849 [1984]; *LI Equity Network, LLC v Village in the Woods Owners Corp.*, 79 AD3d 26 [2010]; *McLeod v Cowles*, 215 AD2d 460 [1995]; *see also Berkowners, Inc. v Dime Sav. Bank of N.Y.*, 286 AD2d 695 [2001] [shares of a cooperative corporation are considered securities which are governed by the UCC]).

UCC 9-610 (a) states that when a debtor defaults on a security agreement, the secured party may sell, lease, license, or otherwise dispose of any or all of the collateral. However, reservation of title under a lease does not create a security interest unless the parties so intended. Therefore, the mere existence of a proprietary lease, without more, does not establish an enforceable security agreement to which the UCC applies (*see McMillan v Park Towers Owners Corp.*, 225 AD2d 742 [1996]). The status quo should be preserved absent a clear showing of entitlement to proceed under UCC article 9 (*id.*).

Here, the governing documents reveal that the defendant had a security interest in the plaintiff's shares. Each of the stock certificates states as follows: "The Corporation by the terms of said By-Laws and proprietary lease, has a first lien on the shares represented by this certificate for all sums due and to become due under said proprietary lease." Furthermore, the defendant's offering plan provides that "[t]he Apartment Corporation will have a lien on each shareholder's shares to secure payment of maintenance charges." Finally, the defendant's bylaws provide, in Article VI, Section 6 that "[t]he Corporation shall at all times have a first lien upon the shares owned by each shareholder for all indebtedness and obligations owing and to be owing by such shareholder to the Corporation, arising under the provisions of any proprietary lease issued by the Corporation and at any time held by such shareholder or otherwise arising." UCC 8-209 provides that a lien in favor of an issuer upon a certificated security is valid against a purchaser if the right of the issuer to the lien is noted conspicuously on the security certificate, which it is here (*see also ALH Props. Ten v 306-100th St. Owners Corp.*, 86 NY2d 643, 648 [1995] [parties did not dispute that defendant had a senior security interest in outstanding maintenance payments, where stock certificates stated that it had a first lien on the shares for all sums due and to become due under the proprietary lease]; *Berkowners, Inc. v Dime Sav. Bank of N.Y.*, 286 AD2d 695 [2001] [stock certificates stated that the plaintiff had a first lien upon the shares of stock for any unpaid maintenance charges; thus the plaintiff had an enforceable lien on the shares of stock for those charges]).

Paragraph 32 (c) of the proprietary leases, titled "Sale of Shares," provides that, upon termination of the lease, the lessee shall surrender the certificates for the shares owned by the lessee, and the lessor may issue a new proprietary lease and a new certificate for the shares, upon which the certificate held by the lessee shall automatically be cancelled. The lessee shall be liable for the balance of indebtedness due after the sale of shares. Such provisions are evidence that the leases in question are secured transactions (see *All Good Leasing Corp. v Bimco Indus.*, 143 AD2d 788 [1988] [provisions that, upon default, the amount due under lease would be accelerated, the subject vehicles sold and lessee liable for any deficiency, were evidence that lease in question was a secured transaction]). Therefore, according to the governing documents, the defendant has an enforceable security interest in the shares owned by the plaintiff, and, upon the plaintiff's default, the defendant was entitled to proceed under UCC article 9 and take possession of the shares without judicial process (see UCC 9-609).

The plaintiff does not dispute that he was in default on the payment of maintenance. The plaintiff did not attempt to cure the default until February 16, 2010, almost three months after the expiration of the 10-day cure period in the notice of default. The plaintiff did not move during the cure period for a temporary restraining order, or for a *Yellowstone* injunction (see *First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630 [1968]) to obtain a stay tolling the running of the cure period (see *Korova Milk Bar of White Plains, Inc. v PRE Props., LLC*, 70 AD3d 646 [2010]; *Hopp v Raimondi*, 51 AD3d 726 [2008]; *Matter of 251 Main St. Corp. v Christine's Shoes Corp.*, 267 AD2d 415 [1999]; *Long Is. Gynecological Servs. v 1103 Stewart Ave. Assoc. Ltd. Partnership*, 224 AD2d 591 [1996]; *Health 'N Sports v Providence Capitol Realty Group*, 75 AD2d 884 [1980]). The plaintiff also did not move for a preliminary injunction to stay the sale of the shares prior to the expiration of the cure period (see *Goldcrest Realty Co. v 61 Bronx Riv. Rd. Owners, Inc.*, 83 AD3d 129 [2011]).

RPAPL 753 (4), which affords a losing residential tenant a 10-day period to cure lease violations before being subject to removal, is inapplicable here. RPAPL 753 applies to a proceeding to recover the possession of premises in New York City occupied for dwelling purposes, upon the ground that the occupant is holding over and continuing in possession of the premises after the expiration of the lease term and without the permission of the landlord. RPAPL 753 (4) provides that in the event such a proceeding is based upon a claim that the tenant or lessee has

breached a provision of the lease, the court shall grant a 10-day stay of issuance of a warrant, during which time the tenant may correct the breach. Here, the defendant has not commenced, and does not intend to commence, a proceeding to recover possession of the subject premises from the occupants, and does not contend that the occupants of any of the subject units are holding over. Therefore, the plaintiff was required to request injunctive relief before the expiration of the cure period.

Furthermore, there is an issue of fact as to whether the plaintiff is a holder of unsold shares such that he was not required to pay sublet fees. While the existence of issues of fact alone will not justify denial of a motion for a preliminary injunction, the motion should not be granted where, as here, there are issues that subvert the plaintiff's likelihood of success on the merits (*see Cooper v Board of White Sands Condominium*, 89 AD3d 669 [2011]; *Radiology Assoc. of Poughkeepsie, PLLC v Drocea*, 87 AD3d 1121 [2011]).

Given the plaintiff's admitted default and failure to cure or move for injunctive relief within the time set forth in the notice of default, his failure to establish that he was a holder of unsold shares for each of the subject units, and the defendant's security interest in the plaintiff's shares, the plaintiff failed to show a likelihood of success on the merits.

The plaintiff further failed to show that he would sustain irreparable harm absent a preliminary injunction. Where a plaintiff can be fully compensated by a monetary award, an injunction will not issue because no irreparable harm will be sustained in the absence of such relief (*see 306 Rutledge, LLC v City of New York*, 90 AD3d 1026 [2011]; *Mar v Liquid Mgt. Partners, LLC*, 62 AD3d 762 [2009]). Since the plaintiff does not reside in any of the subject apartments, and his interest in the apartments is commercial, involving only the potential loss of his investment, as opposed to the loss of his home or a unique piece of property in which he has an unquantifiable interest, he failed to show that he would sustain irreparable harm absent a preliminary injunction (*see Broadway 500 W. Monroe Mezz II LLC v Transwestern Mezzanine Realty Partners II, LLC*, 80 AD3d 483 [2011]; *Dexter 345 Inc. v Cuomo*, 2011 WL 1795824, 2011 US Dist LEXIS 48202 [SD NY 2011], *affd* 663 F3d 59 [2011]; *SK Greenwich LLC v W-D Group [2006] LP*, 2010 WL 4140445, 2010 US Dist LEXIS 112655 [SD NY 2010]).

Finally, the plaintiff failed to show that a balance of the equities weighs in his favor. To obtain an injunction, the plaintiff was required to show that the irreparable injury to be sustained is more burdensome to him than the harm that would be caused

to the defendant through the imposition of the injunction (*see Klein, Wagner & Morris v Lawrence A. Klein, P.C.*, 186 AD2d 631 [1992]; *McLaughlin, Piven, Vogel v Nolan & Co.*, 114 AD2d 165 [1986]; *Poling Transp. Corp. v A & P Tanker Corp.*, 84 AD2d 796 [1981]). Given that the plaintiff does not live in the subject apartments and will not suffer any irreparable harm, and that the plaintiff failed to attempt to cure his default until almost three months after the cure period had expired, or to timely move to stay the cure period, the equities do not weigh in his favor.

Because the plaintiff did not show a likelihood or probability of success on the merits, irreparable harm, or a balancing of the equities in his favor, the Supreme Court erred in granting that branch of his motion which was to preliminarily enjoin the defendant from foreclosing on, selling, transferring, or assigning the plaintiff's shares of stock and proprietary leases in connection with the co-op units during the pendency of the action. Skelos, J.P., Belen, Lott and Miller, JJ., concur.