[10 NYS3d 823]

STAVROS MOUTOPOULIS, Plaintiff, v 2075-2081 WALLACE AVE-NUE OWNERS CORP., Defendant.

Civil Court of the City of New York, Bronx County, March 17, 2015

## APPEARANCES OF COUNSEL

*Anadel Canale P.C.*, Melville (*Anadel Canale* of counsel), for plaintiff.

*Novitt, Sahr & Snow, LLP*, Forest Hills (*Seth Michael Sahr* of counsel), for defendant.

## OPINION OF THE COURT

PAUL A. GOETZ, J.

Before the court are plaintiff's motion for summary judgment pursuant to CPLR 3212 and defendant's cross motion to dismiss pursuant to CPLR 3211 (a) (1) and (7), or for summary judgment pursuant to CPLR 3212.

### Background

In this matter, plaintiff seeks the return of $10,000, the sum of two deposits of $5,000 each, made by plaintiff to defendant in connection with plaintiff's successful bids during two non-judicial auction sales by defendant of certain shares of 2075-2081 Wallace Avenue Owners Corp., specifically those shares appurtenant to units 172 (located at 2079 Wallace Ave.) and 567 (located at 2081 Wallace Ave., Bronx, New York) and the proprietary leases for those two units.

The facts are not in dispute. The notices of sale for each of the two non-judicial auctions include the terms of sale for those shares of the defendant cooperative corporation appurtenant to the apartment units 172 and 567. The terms of sale indicate that plaintiff was to purchase certain shares that defendant allocated to the particular apartment unit purchased and the proprietary leases to be issued appurtenant to such shares. On December 4, 2012, plaintiff executed memoranda of sale relating to both properties promising to comply with the terms of sale attached to the memoranda. The terms of sale for each unit indicate that the shares are being sold pursuant to the defendant's rights under the New York State Lien Law and the Uniform Commercial Code and that the successful bidder will be required, among other things, to deposit with the auctioneer $5,000 which shall be retained by the defendant as liquidated

damages in the event of plaintiff's default in completing the purchase of the shares for that unit. Paragraph 15 of the terms of sale for each of the two bids states that the shares are being transferred "AS IS" on a quitclaim basis without any guarantee, warranty or representation, express or implied on the part of the defendant. There is no dispute that plaintiff failed to complete the transaction within the time frame set forth in the agreement.

Plaintiff's summons and complaint, as signed by plaintiff's counsel, provides the following statement of the nature and substance of the plaintiff's cause of action:

> "Plaintiff entered into contract to purchase two properties, 2079 Wallace Ave, Unit 172, Bronx, New York and 2081 Wallace Ave, Unit 567. Defendant failed to provide financials for cooperative for years 2011 and 2012. Defendant had unpaid lien against property for $225,000.00. Defendant failed to resolve issues and to return down payment of $10,000.00."

Defendant's answer denies the allegations in the complaint and includes a counterclaim against the plaintiff seeking an unspecified amount for "unnecessary legal fees as a result of Plaintiff's frivolous conduct, the exact amount of which is unknown and continuing to date." Defendant contends that plaintiff's filing of this suit against defendant amounts to frivolous conduct.

Plaintiff has not responded to defendant's counterclaim. Neither parties' submissions on the instant motions address defendant's counterclaim for unspecified legal fees.

### Arguments

Plaintiff's supporting attorney affirmation lists attached exhibits[1] (including an affidavit from the plaintiff which does not specifically refer to any of the attached exhibits) and offers the

---

1. Attached to plaintiff's motion are the following exhibits: A (memorandum of sale of apartment 567 at 2081 Wallace Avenue, Bronx, New York, dated Dec. 4, 2012); B (memorandum of sale of apartment 172 at 2079 Wallace Avenue, Bronx, New York, dated Dec. 4, 2012); C (terms of sale regarding: unit 172 [188 shares], dated Dec. 4, 2012); D (terms of sale regarding: unit 567 [183 shares], dated Dec. 4, 2012); E (2075-2081 Wallace Avenue Owners Corp., financial statements Dec. 31, 2010 and 2009); F (Jan. 16, 2013 report by Allegiance Abstract Services, Inc. regarding: unit 567); G (Jan. 16, 2013 report regarding: unit 172); H (plaintiff's supporting affidavit); I (summons and complaint); and J (verified answer).

conclusory argument, "[t]he evidence herein proves that summary judgment should be granted to Plaintiff's [sic] and down payment returned." Plaintiff's memorandum of law contends, without specific citation to statute or case law, that it is well-settled that, in a real property transaction, the term "as is" refers exclusively to the physical conditions of a premise.

Plaintiff's supporting affidavit contends that when he placed the successful bids, he understood the term "AS IS" to refer exclusively to the physical condition of the apartment units; that he "was not represented by an attorney"; that he "was not aware that [he] needed a UCC search or to request financials for the units"; that he retained counsel and that his counsel obtained "copies of those documents" (possibly a reference to financial documents relating to the defendant); that financial information provided by defendant about the defendant was two years old and showed that the property was insolvent; that a "UCC search indicated several liens on the title"; that "as a result of the two items, [Plaintiff] decided not to go forward with the purchase"; that "defendants refuse to cure the issues"; that defendant did not return plaintiff's down payments; that plaintiff was purchasing the property for investment purposes; and that "it would be impossible to sell those properties with the two encumbrances that existed." Essentially, plaintiff argues that he is entitled to summary judgment, pursuant to CPLR 3212, on the grounds that liens exist against the cooperative corporation that would prevent plaintiff from reselling the individual units.

Plaintiff's supporting memorandum of law and attorney affirmations contend, without citation to specific statute or case law, that it is well-settled that the term "as is," when used in the context of the sale of real property, refers to the physical condition of the premises, not the "insurability" or "marketability" of the title for that premises. Plaintiff also contends that it is evident that the property being sold was insolvent, that plaintiff was unaware of that fact when he bid on the properties and that, therefore, plaintiff is entitled to the return of his two $5,000 deposits paid in connection with his successful bids for the shares appurtenant to the two co-op properties.

Plaintiff's attorney affirmation in opposition and reply to defendant's cross motion attaches documents relating to a bankruptcy filing by defendant that was terminated in 2002 and offers the unsubstantiated and conclusory claim that defendant acted deceitfully and in bad faith.

Defendant opposes plaintiff's motion and cross-moves for dismissal of the complaint pursuant to CPLR 3211 (a) (1) and (7), or, in the alternative, for summary judgment pursuant to CPLR 3212 on the grounds that the plain language of the contracts between the parties, specifically the certificates, memoranda, and notices (containing terms of sale) of sale for each of the units, clearly and unequivocally establish that each sale is "AS IS" and that, as set forth in the terms of sale agreed to by the plaintiff, plaintiff's failure to complete the purchase of the units by a certain date resulted in the forfeiture of plaintiff's deposit/down payment for each unit.

## Analysis

The proponent of a motion for summary judgment bears the initial burden of coming forward with evidence showing prima facie entitlement to judgment as a matter of law, and, unless that burden is met, the opponent need not come forward with any evidence at all. (*Penava Mech. Corp. v Afgo Mech. Servs., Inc.*, 71 AD3d 493, 495-496 [1st Dept 2010], citing *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985], and *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980].)

Once the movant establishes prima facie entitlement to judgment, the burden shifts to the opposing parties to "demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action" (*Zuckerman* at 560). While all "facts must be viewed 'in the light most favorable to the nonmoving party' " (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]), mere conclusory allegations or defenses are insufficient to defeat summary judgment (*see Zuckerman*, 49 NY2d at 562).

Plaintiff's Motion for Summary Judgment

Plaintiff's submissions fail to establish entitlement to summary judgment in this matter. Plaintiff's unsubstantiated and conclusory contention that the term "AS IS," as set forth in the terms of sale, refers exclusively to the physical condition of the apartment units 172 and 567, is insufficient to establish plaintiff's entitlement to summary judgment. (*Id.*)

This matter involves plaintiff's two successful bids to purchase shares in the defendant cooperative corporation and the proprietary leases appurtenant to apartment units 172 and 567, not, as plaintiff contends, the sale of real property. Plaintiff's argument relies on the incorrect premise that a

contract for the sale of cooperative apartments is a real property transaction.

"Cooperative apartments are personal property, not real property." (*LI Equity Network, LLC v Village in the Woods Owners Corp.*, 79 AD3d 26, 30 [2d Dept 2010] [citation omitted]; *see also Silverman v Alcoa Plaza Assoc.*, 37 AD2d 166 [1st Dept 1971] [holding that cooperative shares of stock are "goods" within the meaning of article 2 of the UCC].) Therefore, " '[a] contract for the sale of a cooperative apartment, in reality a sale of securities in a cooperative corporation, is governed by the Uniform Commercial Code.' " (*LI Equity Network, LLC v Village in the Woods Owners Corp.*, 79 AD3d at 30, quoting *Friedman v Sommer*, 63 NY2d 788, 789 [1984]). Article 9 of the UCC governs secured transactions. UCC 9-610 provides for disposition of collateral after default, governs non-judicial foreclosure sales in New York and provides, in pertinent part,

"(a) [Disposition after default.] After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing . . .

"(d) [Warranties on disposition.] A contract for sale, lease, license, or other disposition includes the warranties relating to title, possession, quiet enjoyment, and the like which by operation of law accompany a voluntary disposition of property of the kind subject to the contract.

"(e) [Disclaimer of warranties.] A secured party may disclaim or modify warranties under subsection (d):

"(1) in a manner that would be effective to disclaim or modify the warranties in a voluntary disposition of property of the kind subject to the contract of disposition; or

"(2) by communicating to the purchaser a record evidencing the contract for disposition and including an express disclaimer or modification of the warranties."

Here, pursuant to UCC 9-610 (a), defendant, as the secured party to/in the shares assigned to apartment units 172 and 567 may dispose of the collateral (the shares and proprietary leases appurtenant to the two apartments) after default by the prior owner of the shares.

While UCC 9-610 (d) provides that a contract for sale of the cooperative shares includes warranties which, by operation of

law, would accompany the disposition of the cooperative shares, plaintiff fails to identify a warranty that by operation of law accompanies the transfer/disposition of the cooperative shares guaranteeing that the defendant cooperative is financially sound. There is no such warranty or guarantee attached to the transfer or disposition of cooperative shares. (*Hefter v Citi Habitats, Inc.*, 121 AD3d 408, 408-409 [1st Dept 2014] [dismissing fraud claims made by prospective buyer of cooperative shares against broker when purchaser failed to exercise due diligence to determine the true nature of the transaction he was about to enter into], citing *Ittleson v Lombardi*, 193 AD2d 374 [1st Dept 1993].) It is incumbent upon the purchaser of cooperative shares who wishes to protect his or her interests to exercise due diligence. (*See generally* 4-33 Warren's Weed, New York Real Property § 33.51 [2015].) The time for plaintiff to conduct due diligence inquiries into the financial viability of the defendant was before, not after, he executed the terms of sale, successfully bid on the shares and proprietary leases for the two apartments, and paid deposits of $5,000 for each transaction.

Even if such a guarantee existed, and it does not, UCC 9-610 (e) provides that a secured party (here the defendant) may disclaim or modify such warranties. Defendant explicitly disclaimed any warranties relating to its obligations by stating in paragraph 15 of the terms of sale that "the cooperative . . . makes no representation about either the title or any underlying mortgages on the premises or *other obligations of the cooperative corporation* except as may be expressly set forth herein." (Emphasis added.) No express representations were made by the defendant in the terms of sale. If any warranties relating to the financial stability of the defendant did exist, and again, they do not, the defendant effectively disclaimed them in accordance with UCC 9-610 (d) and (e). The plain language of the terms of sale for each transaction indicates that the shares are being transferred without any guarantee, warranty or representation, express or implied on the part of defendant. Nothing in the terms of sale accepted by plaintiff, as evidenced by his signature on both memoranda of sale, indicates that the sales are conditioned upon the financial status of the defendant or conditioned in any other way.

In general,

> "when parties set down their agreement in a clear, complete document, their writing should as a rule

be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990].)

"Whether or not a writing is ambiguous is a question of law to be resolved by the courts." (*Id.*) The court determines, as a matter of law, that the terms of sale for both transactions clearly indicate that in the event of a default by plaintiff, the defendant shall retain the deposit as liquidated damages (terms of sale ¶ 12); that the shares are being transferred "AS IS" on a "quit-claim"[2] basis, without any guarantee, warranty or representation, express or implied, on the part of the defendant (terms of sale ¶ 15); and that the defendant makes no representation about the status of any underlying mortgages on the premises or other obligations of the defendant except as may be expressly set forth in the terms of sale.

Moreover, plaintiff's complaint is with the liens or encumbrances on the defendant corporation, not liens or encumbrances on the individual apartments in the cooperative. Therefore, plaintiff's emphasis on the terms "AS IS" and "quit-claim" is misplaced because those terms relate to the shares and proprietary leases appurtenant to individual apartment units 172 and 567 and not the liens or encumbrances on the defendant corporation.

Because the cooperative shares are not realty, but goods, as defined under article 2 of the UCC, UCC 2-718 governs the measure of damages stemming from breach of a contract for the sale of a cooperative apartment. (*Shulkin v Dealy*, 132 Misc 2d 371, 374 [Sup Ct, NY County 1986]). UCC 2-718 (1) provides "[d]amages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach . . . A term fixing unreasonably large liquidated damages is void as a penalty." Thus, UCC 2-718 permits liqui-

---

**2.** A quitclaim deed does not contain the covenants set forth in a full covenant and warranty deed. Consequently, a quitclaim grantee does not obtain complete protection against defects and encumbrances. (*See generally* 10-111 Warren's Weed, New York Real Property § 111.05 [2015]). Black's Law Dictionary (5th ed 1979) defines quitclaim as a deed of conveyance operating by way of release; that is, intended to pass any title, interest, or claim which the grantor may have in the premises, but not professing that such title is valid, nor containing any warranty or covenants for title.

dated damages so long as the amount is not unreasonably large. The terms of sale here provide for liquidated damages amounts of $5,000 each where the plaintiff's successful bids for the total purchase price were $50,000 and $47,000. The court finds that the $5,000 liquidated damages amounts for each transaction are not unreasonably large so as to be void and that therefore the terms of sale control.

Accordingly, because plaintiff has failed to make a prima facie showing of entitlement to summary judgment, plaintiff's motion for summary judgment is denied in its entirety.

## Defendant's Cross Motion for Summary Judgment

The court finds that defendant, based upon the terms of sale executed by the plaintiff in both transactions, has established entitlement to summary judgment. There is no dispute that plaintiff did not timely close on the cooperative apartments. Plaintiff's failure to close on the cooperative apartments constituted a material breach of the terms of sale and, as shown above, defendant is entitled to retain plaintiff's two deposits of $5,000 each as liquidated damages, pursuant to the terms of sale.

The terms of sale do not require defendant to provide plaintiff with any information concerning the financial status of the defendant prior to closing. Moreover, nothing in the pleadings, plaintiff's affidavit, or the conclusory affirmations of plaintiff's counsel demonstrates the existence of a factual issue in dispute.

Accordingly, defendant's cross motion for summary judgment is granted and summary judgment is awarded to defendant and the matter is dismissed with prejudice.

## Defendant's Cross Motions to Dismiss

Defendant's cross motion to dismiss is denied as moot.

## Counterclaim for Attorney's Fees

Neither party's submissions address the counterclaim for legal fees. 22 NYCRR 130-1.1 provides that the court, in its discretion, may award to any party or attorney in any civil action costs and reasonable attorney's fees resulting from frivolous conduct. Conduct is frivolous if it is completely without merit in law; it is undertaken primarily to delay or prolong the resolution of litigation, or to harass or maliciously injure another; or it asserts material misstatements of facts.

The court declines to find that plaintiff's complaint is completely without merit in law. Defendant's submission makes no showing of entitlement to attorney's fees in this matter

because there is no showing that plaintiff brought this action primarily to harass or maliciously injure defendant or that the summons and complaint assert a material misrepresentation of the facts. Defendant does not set forth a specific amount of attorney's fees in the counterclaim or in the instant submissions.

Accordingly, to the extent that defendant's cross motion for summary judgment might be construed to include the counterclaim for the unspecified amount of attorney's fees, that part of the motion is denied and the counterclaim is dismissed.