Hargraves v Tyler Towers Owners Corp. (2020 NY Slip Op 07173)





Hargraves v Tyler Towers Owners Corp.


2020 NY Slip Op 07173


Decided on December 2, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
HECTOR D. LASALLE
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2019-08258
 (Index No. 705566/19)

[*1]William R. Hargraves, etc., appellant, 
v
Tyler Towers Owners Corp., et al., respondents.


Wagner, Berkow & Brandt LLP, New York, NY (Ian J. Brandt of counsel), for appellant.
Hagan, Coury & Associates, Brooklyn, NY (Paul Golden of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, for injunctive relief, the plaintiff appeals from an order of the Supreme Court, Queens County (Chereé A. Buggs, J.), dated June 3, 2019. The order denied that branch of the plaintiff's motion which was to preliminarily enjoin the defendant Tyler Towers Owners Corp. from foreclosing on, selling, transferring, or assigning the plaintiff's shares of stock in the defendant Tyler Towers Owners Corp. during the pendency of the action.
ORDERED that the order is affirmed, with costs.
The defendant Tyler Towers Owners Corp. (hereinafter the defendant) is a residential cooperative housing corporation and the owner of a multiple dwelling in Jamaica, Queens. The plaintiff is a shareholder of the defendant and the proprietary lessee of an apartment in the cooperative building, where he resided. In 2016 or 2017, the steam pipes under the apartment's floors and the steam risers behind the apartment's walls and ceiling began to emit steam, which caused damage to the apartment. Pursuant to a New York City Fire Department directive, the defendant undertook immediate repairs to the steam pipes and risers.
In November 2017, the plaintiff and the defendant entered into an agreement wherein the plaintiff agreed to vacate his apartment and provide the defendant with unrestricted access to it so that the defendant could repair the damage to the ceiling, walls, and floor. As consideration for the plaintiff's agreement to vacate and provide access to the apartment, the defendant agreed to make certain payments to the plaintiff.
According to the plaintiff, the defendant's restoration work in the apartment commenced in November 2017 and continued through July 2018, when water from plumbing from the apartment directly above poured into the plaintiff's apartment and destroyed all the wood flooring that was recently installed by the defendant. The plaintiff alleged that in May 2018, the defendant ceased making payments to him pursuant to their agreement. The defendant alleged that it finished making the requisite repairs to the plaintiff's apartment in May 2018, and that it satisfied its obligations under that agreement.
In a notice to cure dated January 3, 2019, the defendant advised the plaintiff that he was in breach of the proprietary lease based on his default in tendering his monthly maintenance payments, and that he was required to cure this default by tendering the maintenance arrears on or [*2]before January 28, 2019. The notice to cure further advised that should the plaintiff fail to cure his default in the time period set forth therein, the proprietary lease for the apartment would be terminated and his shares considered forfeited and sold at a nonjudicial foreclosure auction. The plaintiff did not cure his default.
In a notice of termination dated January 30, 2019, the defendant notified the plaintiff that based on his failure to cure his breach of the proprietary lease, the defendant was electing to cancel the plaintiff's shares and terminate his tenancy, requiring him to vacate the apartment by February 19, 2019. The defendant then issued a notice of sale dated February 21, 2019, which advised the plaintiff that based on his default under the proprietary lease, the defendant would be auctioning the plaintiff's shares on April 3, 2019.
On March 29, 2019, the plaintiff commenced this action, alleging, inter alia, breach of the warranty of habitability and the proprietary lease, and seeking, among other things, declaratory and injunctive relief. The plaintiff also moved, inter alia, pursuant to CPLR 6301 to preliminarily enjoin the defendant from auctioning his shares. The Supreme Court denied that branch of the plaintiff's motion based on his failure to seek injunctive relief prior to the expiration of the cure period.
We agree with the Supreme Court's determination denying that branch of the plaintiff's motion which was for a preliminary injunction based on the plaintiff's failure to move for such relief during the cure period. Motions for preliminary injunctions pursuant to CPLR 6301, like motions for Yellowstone injunctions (First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630), must "be made prior to the expiration of the cure period" (Goldcrest Realty Co. v 61 Bronx Riv. Rd. Owners, Inc., 83 AD3d 129, 135; see Lombard v Station Sq. Inn Apts. Corp., 94 AD3d 717). Here, the plaintiff waited an additional two months after the expiration of the cure period to seek such relief, without tendering any explanation for the delay.
In light of the foregoing, we need not reach the plaintiff's remaining contentions.
DILLON, J.P., LASALLE, CONNOLLY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court